THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD GILES, Defendant-Appellant.

First District (4th Division)   No. 1—89—0221

Opinion filed January 17, 1991.

Anita Rivkin-Carothers, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David R. Butzen, and Howard D. Weisman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, defendant, Reginald Giles, was found guilty of attempted first degree murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1), aggravated battery (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(b)(1), (b)(8)), and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). Defendant was sentenced to 16 years' imprisonment and fined $4,500 on the respective counts.

On appeal, defendant seeks reversal of his conviction or, in the alternative, reversal of his conviction and remand of the cause for a new trial. Defendant raises the following issues for our review: (1) whether he was denied effective assistance of counsel, and (2) whether his retrial was barred by double jeopardy.

We affirm.

Defendant was charged by indictment with attempted first degree murder, aggravated battery, and armed violence as a result of allegedly shooting Steven Winbush. Winbush was shot on a street in the vicinity of 45th Street and Cottage Grove Avenue, in Chicago. The incident occurred on October 16, 1987, at approximately 6:30 a.m.

Defendant's bench trial commenced on September 21, 1988. Opening statements were waived by the parties. The first witness the State called to testify was Geraldine Claytor. Claytor had known Winbush for six years and was with him the morning of the shooting. She testified that she had requested Winbush's assistance in moving some of her personal effects from Winbush's trailer to her new apartment located near 45th Street and Cottage Grove Avenue. Winbush had begun moving the items from his trailer the evening of October 15, 1987.

At approximately 5 a.m. on October 16, Winbush left Claytor's apartment. Sometime thereafter, Claytor left her apartment to look for Winbush. As she approached the newsstand at 45th Street and Cottage Grove Avenue, she heard Winbush call to her. When she saw Winbush, she began walking toward him. At that time, she also saw defendant getting out of a small compact car. Claytor testified that defendant also proceeded to walk toward Winbush.

At this point in the trial, Claytor's testimony was interrupted by the trial judge. The trial judge called the attorneys into his chambers to determine whether defendant's counsel was intoxicated. Defendant's counsel admitted that he had been drinking since the night before trial. The trial judge then asked defendant if he wanted to continue with the trial, as his attorney was under the influence of alcohol. Defendant responded that he did not wish to continue with the trial. The trial judge then declared a mistrial.

Defendant's counsel was then told to have his partner, Leonard Schultz, assume defendant's representation at the new trial. A five-minute recess was called, and shortly thereafter defendant's trial was again commenced with Schultz conducting the defense. Claytor was once again called by the State to testify. She essentially repeated her testimony from the first trial. She also testified that she saw defendant shoot Winbush four or five times. Claytor was standing approximately 20 feet away from the parties when the shooting began. Defendant shot Winbush at point-blank range. After shooting Winbush, defendant pointed the gun at Claytor and stated, "You better watch out." Defendant then fled.

The next witness the State called was Steven Winbush, who corroborated Claytor's testimony. He testified that he had no gang affiliations but he was aware that defendant's brother had been shot by an unknown assailant on October 15, 1987. Winbush testified that he did not shoot defendant's brother.

As a result of the shooting, Winbush underwent a series of operations. He lost his spleen and part of his colon. He also sustained injuries to his kidneys, stomach, and upper and lower intestines. One of the bullets is still lodged in his body. Winbush testified that defendant was the man who shot him. After Winbush's testimony, the State rested.

The defense called Keisha Pulliam, defendant's niece. Keisha testified that she was at Billings Hospital, located at 59th Street and Cottage Grove Avenue, the morning of October 16, 1987, from 4 a.m. until she left for school between 6:30 and 7 a.m. She was at the hospital because one of her other uncles, Frank Bradley, had been shot

the previous night. According to Keisha, defendant joined her at the hospital between 4 and 4:30 a.m. Keisha testified that defendant was still at the hospital when she left to attend school.

Karee Cooks, defendant's sister, testified that she was also at the hospital with defendant the morning of October 16, 1987. According to Cooks, defendant was at the hospital from 4:30 until 8:30 a.m.

Defendant chose to testify in his own defense. He stated that on the morning of October 16, 1987, he was at his place of employment. Defendant is a security guard at Cesar's Palace. He left Cesar's Palace at approximately 3:30 a.m. and arrived at Billings Hospital at approximately 4 a.m., where he remained until 8:30 or 9 a.m. Defendant denied shooting Winbush.

At the close of the evidence, defendant was found guilty of all counts in the indictment and sentenced to 16 years to be served in the Illinois Department of Corrections. He was also fined $4,500. The trial court arrived at its decision based upon the testimony of Geraldine Claytor and Steven Winbush. Defendant now appeals from the the trial court's decision.

■ The first issue defendant raises is that he was denied effective assistance of counsel. He posits five theories to support this contention. In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the United States Supreme Court set forth the following two-prong test to determine whether a defendant has been denied effective assistance of counsel: (1) the defendant must show that counsel's representation fell below an objective standard of reasonableness, and (2) the defendant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Moreover, there is a strong presumption that counsel's conduct falls within the reasonableness standard; defendant must also overcome the presumption that the challenged conduct might be considered sound trial strategy under the circumstances. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) There must be a reasonable probability that the outcome would have been different had it not been for counsel's ineffective representation. (*People v. Bryant* (1989), 128 Ill. 2d 448, 458.) We do not find that the outcome of the instant case would have been different but for defense counsel's conduct in any of the five instances of ineffective representation that defendant alleges. Nor do we find that the cumulative effect of these alleged instances would warrant a finding of ineffective representation by defendant's counsel.

■ First, defendant contends that original trial counsel was able to conduct his defense and should not have been dismissed from the case. He also argues that his original counsel's failure to object to the *sua sponte* declaration of a mistrial is tantamount to actual incompetence. We disagree. Defendant's original trial counsel admitted that he was under the influence of alcohol. The trial judge observed that defendant counsel could not even walk. If counsel had trouble with his equilibrium, he certainly could not be expected to conduct a trial. We find that the trial judge, in dismissing defendant's original counsel, was protecting defendant's right to a fair trial with competent representation.

Furthermore, prior to declaring a mistrial, the trial judge asked defendant whether he wanted to continue his trial with his current attorney. Defendant responded that he wanted a retrial. Defendant cannot now fault counsel for failure to object to the mistrial when it was defendant's choice not to continue with the trial. In effect, defendant is now asking this court to override *his* previous decision.

Defendant's contentions are contradictory: on one hand, he argues that his original counsel was competent to conduct his defense, while, on the other hand, he argues that it was incompetent of his original counsel not to have objected to the declaration of a mistrial. We find defendant's arguments contradictory, and we will not, here, reconcile such conflicting theories. Defendant's contentions are without merit with respect to this issue.

■ Second, defendant argues that his new trial counsel was generally unprepared to try the case. He contends that counsel should have asked for a continuance to prepare for trial. He reasons that the additional time would have allowed counsel to adequately interview his two alibi witnesses. However, after carefully reviewing the record, we do not find that defendant's new counsel was unfamiliar with the case. We note that not only was Schultz a partner of the original trial counsel, but it was Schultz who responded to the State's discovery request prior to the start of trial.

The record also reveals that Schultz interviewed both of the so-called alibi witnesses prior to their testimony. More importantly, we note that neither alibi witness told the police or the State's Attorney that she was with defendant during the time that Winbush was shot. According to alibi witness Karee Cook, she told Schultz three days prior to her testimony that she was with defendant at the time of the shooting. Alibi witness Keisha Pulliam told Schultz of defendant's alibi the day before her testimony.

The issue then becomes not whether defendant's trial counsel was ineffective, but, rather, whether these alibi witnesses provided credible testimony. Witness credibility is a matter for the trier of fact to determine. Determinations as to the weight and credibility given to a witness in a nonjury trial are an exclusive function of the trial court. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165.

The trial court found defendant guilty based upon the eyewitness testimony of Steven Winbush and Geraldine Claytor. Winbush and Claytor identified defendant as the assailant. The testimony of these witnesses was credible. The court chose not to give weight to the alibi testimony. "Where identification of the accused is at issue, *** the testimony of a single witness is sufficient to support a conviction even in the presence of contradictory alibi testimony, provided that the witness is credible and viewed the defendant under circumstances which would permit a positive identification." (*People v. Spicer* (1987), 163 Ill. App. 3d 81, 92.) We defer to the trial court's judgment with respect to this credibility issue.

■ Third, defendant alleges ineffective assistance of counsel for failure to call Mrs. Janie Walker as an alibi witness. Defendant claims that Mrs. Walker, who was a nurse at Billings Hospital and who has since died, would have testified that defendant was at his brother's bedside at the time of the shooting.

Original defense counsel had a list of defendant's alibi witnesses. There were three alibi witnesses. Two of the alibi witnesses were called to testify; the third, Mrs. Walker, was not called upon to testify. As the State correctly argues, decisions as to whether or not to call certain witnesses are considered to be a matter of trial strategy and, thus, are beyond the scope of review. (*People v. Spicer* (1987), 163 Ill. App. 3d 81, 93.) Defendant has not rebutted the strong presumption that his counsel's decision was not merely a matter of strategy. (*Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065.) Further, had defense counsel elected to have Mrs. Walker testify and if she had corroborated defendant's alibi, the testimony would have only been cumulative.

Defendant also claims ineffective assistance of counsel for failure to interview Mrs. Walker. However, even if Mrs. Walker had consented to an interview, the result in the instant case would not have been different due to the overwhelming eyewitness testimony against defendant. There must be a reasonable probability that the outcome would have been different had it not been for the alleged ineffective representation. *People v. Bryant* (1989), 128 Ill. 2d 448, 458.

■ Fourth, defendant argues that Schultz did not provide him with effective assistance of counsel because he failed to investigate Winbush's criminal history prior to trial. Defendant contends that such information could have been used to impeach Winbush or to show Winbush's propensity to violence. Defendant specifically refers to the fact that Winbush was charged with carrying a gun one month after the occurrence in this case. This charge, however, did not result in a conviction.

Moreover, the fact that Winbush was carrying a gun is irrelevant to the issues raised by defendant. Carrying a gun is not necessarily indicative of a violent or aggressive nature. It is conceivable that Winbush carried the gun as a means of protection as he had just been shot the previous month for no apparent reason. Even assuming, *arguendo*, that it was error not to bring this fact out at trial, based on the overwhelming evidence against defendant, the error was harmless. The impeachment would not have resulted in defendant's acquittal. We, therefore, find this contention without merit.

■ Defendant's fifth and final argument with respect to his ineffective assistance of counsel claim is that counsel did not ask for a recess prior to defendant's testimony. Defendant contends that a recess should have been requested in order to prepare his testimony. We, however, after carefully examining the record, do not find that defense counsel's direct examination of defendant to be deficient.

Furthermore, it was at defendant's request that he be allowed to testify; defendant did not request any time to prepare for his own testimony. Moreover, during the direct examination of defendant, Schultz elicited testimony detailing his alleged alibi. Schultz also brought out the positive aspects of defendant's background and allowed defendant to explain the negative aspects of his past. We also find this contention to be without merit.

The second issue defendant raises is whether his retrial should have been barred by double jeopardy. The United States Constitution guarantees that no person shall be put in jeopardy twice for the same offense. (U.S. Const., amend. V.) Defendant contends that his constitutional rights were violated when after the State's first witness had been sworn, and testimony begun, the trial judge declared a mistrial.

■ The declaration of a mistrial, however, does not bar a retrial in all circumstances. (*People v. Escobar* (1988), 168 Ill. App. 3d 30, 36-37.) There is no barrier to reprosecution if the mistrial was "attributable to the defendant by virtue of his motion or consent." (*People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 508.) However,

defendant reasons that his failure to object to the trial court's *sua sponte* declaration of a mistrial was not a consent to the mistrial.

Defendant analogizes his case to *People v. Camden* (1986), 140 Ill. App. 3d 480, in which the appellate court held that, as a matter of law, "[d]efendant's silence and failure to object to the court's declaration of a mistrial *sua sponte* does not constitute consent to a mistrial so as to permit retrial." *Camden*, 140 Ill. App. 3d at 485.

This decision, however, was reversed by the Illinois Supreme Court. (See *People v. Camden* (1987), 115 Ill. 2d 369.) Our supreme court held that defendant had implicitly consented to the mistrial as evidenced by his failure to object to the mistrial and his course of conduct after the mistrial was declared. *Camden*, 115 Ill. 2d at 378-79.

■ In the instant case, defendant explicitly consented to a mistrial. We, therefore, find that double jeopardy does not bar reprosecution of defendant under the facts of this case.

■ Although the issue of defendant's fine of $4,500 was not raised on appeal, this court may review the propriety of this penalty. (*People v. White* (1972), 5 Ill. App. 3d 205, 207.) As we find no basis in the record for this fine, we vacate this penalty pursuant to Supreme Court Rule 615(b)(4), which provides: "On appeal the reviewing court may reduce the punishment imposed by the trial court." 107 Ill. 2d R. 615(b)(4); see also *People v. Tecza* (1972), 4 Ill. App. 3d 1058, 1061.

For the foregoing reasons, we affirm the trial court's finding of guilt and we vacate the $4,500 fine. As part of this judgment, we grant the State's request that defendant be assessed $75 as costs and fees for this appeal pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Judgment affirmed; fine vacated.

JIGANTI, P.J., and McMORROW, J., concur.