828 N.E.2d 1206 (2005)
357 Ill. App.3d 256
293 Ill.Dec. 708
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Lorenzo REDMOND, Defendant-Appellant.
No. 1-04-0284.
Appellate Court of Illinois, First District, First Division.
April 18, 2005.
Rehearing Denied May 26, 2005.
*1208 Richard A. Devine, Renee Goldfarb, Margaret J. Campos, Sally Dilgart and Melissa Samp, Cook County State's Attorney's Office, for Plaintiff-Appellee.
Michael J. Pelletier and Rebecca I. Levy, Office of the State Appellate Defender, for Defendant-Appellant.
Justice McBRIDE delivered the opinion of the court:
Defendant, Lorenzo Redmond, appeals his burglary conviction, arguing that (1) defendant was denied his right to a fair and impartial jury when the trial court did not strike a juror who failed to disclose a prior criminal charge for cause or, in the alternative, he was denied effective assistance of counsel when his counsel failed to exercise a peremptory challenge to remove the juror; (2) defendant was eligible to elect substance abuse treatment in lieu of incarceration and the trial court erred in failing to inform defendant of such any election; and (3) the statute authorizing the compulsory extraction and perpetual storage of the DNA of felons violated defendant's fourth amendment rights.
The following evidence was admitted at defendant's October 2003 jury trial.
Officer Vincent Avery testified that he is employed with the intelligence unit of the Chicago police department and also on the counter-terrorism team. The intelligence unit does surveillance in different forms for different departments within the Chicago police department. On July 13, 2003, Officer Avery was assigned to counter-terrorism for an event at McCormick Place. He and his partner were in plain clothes and drove an unmarked car.
At approximately 12:40 p.m., Officer Avery was driving down 23rd Street from Indiana Street. He saw an individual identified as defendant standing down the street and looking around as though defendant was waiting for a bus or something. However, Officer Avery noticed that there was no bus stop at that corner. Officer Avery and his partner drove around the block. The second time, Officer Avery saw defendant in a vehicle that they had observed on their first pass of the street. Defendant was on the passenger side with half of his body in the vehicle. Officer Avery identified the vehicle as a blue Chevy Blazer. He saw defendant's head through the window. On the first pass down the street, Officer Avery noticed that all of the windows were intact on the Blazer, but this time he saw that the passenger front window was broken.
As Officer Avery approached the rear of the Blazer, defendant ran past the car. Officer Avery yelled "police," but defendant continued running and Officer Avery ran after him. Officer Avery eventually detained defendant at 24th and Michigan. At one point during the chase, Officer Avery dropped his weapon and asked a citizen to drive him in the direction of defendant. Officer Avery stated that he did not lose sight of defendant. When he stopped defendant, defendant threw *1209 change to the ground. Officer Avery later learned that the owner of the Blazer was Michael Budil.
Michael Budil testified that on July 13, 2003, he drove into Chicago to attend the All Star Fan Fest at McCormick Place with his son, nephew and stepson. He drove a 1999 blue Chevy Blazer. He parked his car on the street at Indiana Street and 23rd Street. While he was at McCormick Place, Budil received a phone call from a Chicago police officer. He left with the kids and returned to his car. When Budil reached his car, he saw that the passenger-side window was broken. The window was not broken when Budil parked the car. Budil also noticed that some compact disks (CDs) were "disheveled" and he was missing coins from a slot between the front seats. Budil had about $5 or $6 in coins at the time. Budil stated that he had never seen defendant before that day, and defendant did not have permission to be in Budil's car.
The jury found defendant guilty of burglary. At the sentencing hearing, the trial court noted that, based upon prior felony convictions, "defendant is a Class X mandate" and then sentenced him to nine years' imprisonment. This appeal followed.
Defendant argues that he was denied his right to a fair trial because the trial court failed to strike a juror for cause when that juror failed to disclose a prior criminal charge. The State responds that defendant waived this issue by failing to use a peremptory challenge on the objectionable juror. We agree.
During voir dire, the trial court asked the venire if any of them had ever been accused of a crime. Juror Mullally did not indicate that he had. Later in chambers, defendant's attorney asked to strike Mullally for cause because he failed to disclose that he had been accused of a crime. The court brought Mullally into chambers and asked him if there was a time when he was arrested and charged with driving while intoxicated. Mullally admitted that there was, and that he did not disclose it earlier because he did not think it applied. Mullally thought it did not apply because it was a misdemeanor. The court denied defendant's request to strike Mullally for cause, stating that the question was confusing and Mullally said he could be fair. Defendant did not use a peremptory challenge to excuse Mullally.
"The failure to challenge a juror for cause or by peremptory challenge waives any objection to that juror." People v. Collins, 106 Ill.2d 237, 271, 87 Ill.Dec. 910, 478 N.E.2d 267 (1985). A court's failure to remove a prospective juror for cause is grounds for reversal only if the defense exercised all of its peremptory challenges and an objectionable juror was allowed to sit on the jury. People v. Lake, 298 Ill.App.3d 50, 56, 232 Ill.Dec. 217, 697 N.E.2d 1147 (1998).
Accordingly, defendant's argument that the trial court erred in denying defendant's motion to strike Mullally for cause is waived because defendant failed to exercise a peremptory challenge on Mullally and defendant had not yet exhausted his peremptory challenges.
As an alternative argument, defendant contends that he was denied effective assistance of counsel because his attorney failed to exercise a peremptory challenge to exclude Mullally from the jury.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under Strickland, a *1210 defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. In evaluating sufficient prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2052, 80 L.Ed.2d at 698.
In the present case, defendant cannot show that he suffered any prejudice as a result of his attorney's alleged error. The evidence against defendant was substantial. Here, Officer Avery testified that he saw defendant inside a vehicle that belonged to another person. Additionally, Officer Avery noticed that the passenger window was not broken when he initially drove past, but upon recircling, Officer Avery saw that the window was broken and defendant was partially inside the Blazer. Budil also testified that the window was intact when he parked the car and he did not give defendant permission to enter Budil's car. Also, the defense presented no evidence. Even if defendant's attorney had removed Mullally from the jury, another jury most likely would have found defendant guilty. Defendant cannot show that the result of the proceeding would have been different if his attorney excluded Mullally from the jury.
We also note that defendant's attorney's actions were not deficient. In order to prove ineffective assistance of counsel, defendant must overcome the presumption that the challenged conduct might be considered sound trial strategy under the circumstances. People v. Giles, 209 Ill.App.3d 265, 269, 154 Ill.Dec. 116, 568 N.E.2d 116 (1991). Neither mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have handled the case differently suggests the trial lawyer was incompetent. People v. Young, 341 Ill.App.3d 379, 383, 275 Ill.Dec. 237, 792 N.E.2d 468 (2003). A decision that involves a matter of trial strategy typically will not sustain a claim of ineffective representation. People v. Simmons, 342 Ill.App.3d 185, 191, 276 Ill.Dec. 745, 794 N.E.2d 995 (2003).
Defendant's attorney's decision against using a peremptory challenge on Mullally was a matter of trial strategy. Mullally indicated that he could be a fair juror. Mullally's failure to initially disclose a prior charge of driving while intoxicated did not necessarily render him unfair or unable to serve as a juror. Defendant's attorney considered Mullally's actions but opted, as his part of his strategy, not to strike him. We do not find such actions of trial strategy to be egregious enough to have denied defendant effective assistance of counsel.
Next, defendant claims that the trial court failed to inform of his option to seek Treatment Alternatives for Safe Communities (TASC) probation under the Alcoholism and Other Drug Abuse and Dependency Act (Act) instead of imprisonment. See 20 ILCS 301/40-5 (West 2002). Specifically, defendant contends that he was eligible for TASC probation and the court was obligated to present it as an alternative to a prison sentence. The State maintains that defendant was not eligible for TASC probation due to his *1211 prior felony convictions, which mandated a Class X sentence.
Section 40-5 of the Act outlines the election of treatment in TASC for eligible addicts, and reads:
"An addict or alcoholic who is charged with or convicted of a crime may elect treatment under the supervision of a licensed program designated by the Department, referred to in this Article as `designated program', unless:
(1) the crime is a crime of violence;
(2) the crime is a violation of Section 401(a), 401(b), 401(c) where the person electing treatment has been previously convicted of a non-probationable felony or the violation is non-probationable, 401(d) where the violation is non-probationable, 401.1, 402(a), 405 or 407 of the Illinois Controlled Substances Act, or Section 4(d), 4(e), 4(f), 4(g), 5(d), 5(e), 5(f), 5(g), 5.1, 7 or 9 of the Cannabis Control Act;
(3) the person has a record of 2 or more convictions of a crime of violence;
(4) other criminal proceedings alleging commission of a felony are pending against the person;
(5) the person is on probation or parole and the appropriate parole or probation authority does not consent to that election;
(6) the person elected and was admitted to a designated program on 2 prior occasions within any consecutive 2-year period;
(7) the person has been convicted of residential burglary and has a record of one or more felony convictions;
(8) the crime is a violation of Section 11-501 of the Illinois Vehicle Code or a similar provision of a local ordinance; or
(9) the crime is a reckless homicide or a reckless homicide of an unborn child, as defined in Section 9-3 or 9-3.2 of the Criminal Code of 1961, in which the cause of death consists of the driving of a motor vehicle by a person under the influence of alcohol or any other drug or drugs at the time of the violation." 20 ILCS 301/40-5 (West 2002).
Under the plain language of the statute, defendant would be eligible for TASC probation. However, section 5-5-3(c)(8) of the Unified Code of Corrections states that defendant is not eligible for TASC probation because a Class X sentence is mandated. Section 5-5-3(c)(8) provides:
"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class 2 or greater Class felony and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second. A person sentenced as a Class X offender under this paragraph is not eligible to apply for treatment as a condition of probation as provided by Section 40-10 of the Alcoholism and Other Drug Abuse and Dependency Act." 730 ILCS 5/5-5-3(c)(8) (West 2002).
Defendant urges this court to interpret section 5-5-3(c)(8) to allow TASC eligibility prior to sentencing because the last sentence of the statute "excludes from *1212 election of treatment only that group of otherwise eligible offenders who provide the court with reason to believe they are addicts after being sentenced as Class X offenders." (Emphasis in original.) Defendant contends that section 5-5-3(c)(8) does not exclude him from TASC probation election because the court was aware of his drug problem prior to sentencing. However, defendant fails to acknowledge the mandatory effect of section 5-5-3(c)(8) which requires the trial court to sentence defendant as a Class X offender.
According to the pre-sentence investigation, defendant has a 1991 conviction for robbery, a 1993 conviction for possession of a controlled substance with intent to deliver, and a 1999 conviction for burglary. All of defendant's prior convictions qualify as Class 2 or greater (see 720 ILCS 5/18-1(b) (West 1992) (robbery is a Class 2 felony); 720 ILCS 570/401(c) (West 1992) (possession of a controlled substance with intent to deliver is a Class 1 felony); 720 ILCS 5/19-1(b) (West 1998) (burglary is a Class 2 felony)); thus defendant must be sentenced as a Class X offender. The statutory language of section 5-5-3(c)(8) "expresses a clear legislative intent to enhance the punishment of certain offenders based entirely on objective, historical criteria, their record of criminal convictions, and places no limitations or restrictions on its application based on mental state or any other subjective matter." People v. Thomas, 171 Ill.2d 207, 222, 215 Ill.Dec. 679, 664 N.E.2d 76 (1996). In Thomas, the supreme court held that the phrase "shall be sentenced as a Class X offender" has a mandatory meaning that precludes exceptions. Thomas, 171 Ill.2d at 222, 215 Ill.Dec. 679, 664 N.E.2d 76. In making its holding, the court noted that it had repeatedly characterized section 5-5-3(c)(8) as mandatory. Thomas, 171 Ill.2d at 222, 215 Ill.Dec. 679, 664 N.E.2d 76; see also Morrow v. Dixon, 108 Ill.2d 223, 226-27, 91 Ill.Dec. 390, 483 N.E.2d 876 (1985) (imposition of sentence on defendant as Class X offender was mandated where trial court was aware of prior convictions satisfying section 5-5-3(c)(8), because statutory provision for minimum sentence is mandatory and must be obeyed); People v. Jameson, 162 Ill.2d 282, 287, 205 Ill.Dec. 90, 642 N.E.2d 1207 (1994) (referring to section 5-5-3(c)(8) as a "mandatory sentencing provision"); People v. Levin, 157 Ill.2d 138, 156, 191 Ill.Dec. 72, 623 N.E.2d 317 (1993) (in case of Class X offender, the sentencing court is "required by statute to impose a sentence from an elevated sentencing range").
Since section 5-5-3(c)(8) operates as a mandate on the trial court to sentence a qualified defendant as a Class X offender, defendant was not eligible for TASC probation. The trial court was without discretion to sentence defendant to anything other than a Class X sentence. Because defendant was required to be sentenced as a Class X offender, he is not eligible to apply for TASC. The trial court did not err in sentencing defendant as a Class X offender to nine years' imprisonment.
Finally, defendant argues that section 5-4-3 of the Unified Code of Corrections, which allows for the extraction and storage of the deoxyribonucleic acid (DNA) of convicted felons, violates his fourth amendment right to be free from unreasonable searches and seizures. The State maintains that the statute is constitutional and that a criminal defendant does not have privacy rights in his identity that would require individualized suspicion before blood can be drawn.
Section 5-4-3 mandates DNA sampling from any person convicted or found guilty "of any offense classified as a felony under Illinois law." 730 ILCS 5/5-4-3(a) (West 2002). Such persons "shall, *1213 regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this [s]ection." 730 ILCS 5/5-4-3(a) (West 2002). The purpose of section 5-4-3 is to establish a data bank of genetic identity of recidivist criminal offenders. People v. Garvin, 349 Ill.App.3d 845, 853, 285 Ill.Dec. 953, 812 N.E.2d 773 (2004), appeal allowed, No. 99031, 212 Ill.2d 541, 291 Ill.Dec. 711, 824 N.E.2d 287 (November 24, 2004); see also 730 ILCS 5/5-4-3 (West 2002). We review de novo whether this section violates fourth amendment concerns as a question of law. People v. Hall, 352 Ill.App.3d 537, 545, 287 Ill.Dec. 736, 816 N.E.2d 703 (2004).
Several panels of the appellate court have considered the constitutionality of DNA extraction under section 5-4-3. See People v. Garvin, 349 Ill.App.3d 845, 285 Ill.Dec. 953, 812 N.E.2d 773 (2004); People v. Hall, 352 Ill.App.3d 537, 287 Ill.Dec. 736, 816 N.E.2d 703 (2004); People v. Ramos, 353 Ill.App.3d 133, 288 Ill.Dec. 460, 817 N.E.2d 1110 (2004); People v. Peppers, 352 Ill.App.3d 1002, 288 Ill.Dec. 502, 817 N.E.2d 1152 (2004); People v. Edwards, 353 Ill.App.3d 475, 288 Ill.Dec. 879, 818 N.E.2d 814 (2004); People v. Foster, 354 Ill.App.3d 564, 290 Ill.Dec. 421, 821 N.E.2d 733 (2004). In Garvin, the court noted that all 50 states and the District of Columbia have enacted genetic marker testing statutes, and all of the challenged statutes have been held to be constitutional. See Garvin, 349 Ill.App.3d at 853-54, 285 Ill.Dec. 953, 812 N.E.2d 773.
The fourth amendment protects all people against unreasonable searches and seizures. U.S. Const., amend. IV. Analysis of a biological sample has long been considered a search within the meaning of the fourth amendment. Skinner v. Ry. Labor Executives' Ass'n., 489 U.S. 602, 616, 109 S.Ct. 1402, 1412-13, 103 L.Ed.2d 639, 659 (1989); see also Schmerber v. California, 384 U.S. 757, 767-68, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908, 917-18 (1966). "However, it must be remembered that the fourth amendment, as applied to the states by the fourteenth amendment, does not proscribe all searches and seizures but only those that are unreasonable, thereby upholding at the same time fair leeway for the enforcement of law and the protection of the community at large." Hall, 352 Ill.App.3d at 545, 287 Ill.Dec. 736, 816 N.E.2d 703.
In considering the issue of DNA testing, courts have taken two approaches in their fourth amendment analysis, a balancing test and a special needs test. Hall, 352 Ill.App.3d at 545, 287 Ill.Dec. 736, 816 N.E.2d 703; Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773. Illinois courts have favored the balancing test over the special needs approach. Foster, 354 Ill.App.3d at 571, 290 Ill.Dec. 421, 821 N.E.2d 733; Edwards, 353 Ill.App.3d at 482, 288 Ill.Dec. 879, 818 N.E.2d 814; Hall, 352 Ill.App.3d at 545-46, 287 Ill.Dec. 736, 816 N.E.2d 703; Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773; People v. Wealer, 264 Ill.App.3d 6, 14, 201 Ill.Dec. 697, 636 N.E.2d 1129 (1994).
With respect to the balancing approach, the State's interest in the search and seizure is balanced against the individual's expectation of privacy and the intrusive nature of the search. Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d 703; Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773. It is beyond dispute that the State has a strong interest in deterring and prosecuting recidivist criminal acts. Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d 703; Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773; In re Robert K., 336 Ill. *1214 App.3d 867, 871, 271 Ill.Dec. 630, 785 N.E.2d 562 (2003); Wealer, 264 Ill.App.3d at 16, 201 Ill.Dec. 697, 636 N.E.2d 1129. Section 5-4-3 is closely related to this interest. Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d 703; Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773; Wealer, 264 Ill.App.3d at 17, 201 Ill.Dec. 697, 636 N.E.2d 1129. "Mandatory DNA testing of convicted felons is a precise technological method of identifying and eliminating potential suspects." Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773, citing Wealer, 264 Ill.App.3d at 17, 201 Ill.Dec. 697, 636 N.E.2d 1129. DNA identification has been compared to a fingerprint, in that both are identity markers, but DNA is more conclusive. Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773.
As for the privacy rights of a defendant, it is well established that convicted persons, including those on probation, lose some rights to personal privacy that would otherwise be protected under the fourth amendment. Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773. Courts have reasoned that once a person is convicted of one of the felonies enumerated in a genetic marker testing statute, his or her identity has become a matter of state interest and he or she has lost any legitimate expectation of privacy in the identifying information derived from the bodily sampling. Foster, 354 Ill.App.3d at 571, 290 Ill.Dec. 421, 821 N.E.2d 733; Hall, 352 Ill.App.3d at 547-48, 287 Ill.Dec. 736, 816 N.E.2d 703; Garvin, 349 Ill.App.3d at 855, 285 Ill.Dec. 953, 812 N.E.2d 773.
In balancing these interests, we find that the intrusion on defendant's diminished privacy rights in providing a DNA sample under section 5-4-3 of the Code is outweighed by the State's interest in preventing recidivism, identifying offenders and solving past and future crimes. See Garvin, 349 Ill.App.3d at 856, 285 Ill.Dec. 953, 812 N.E.2d 773; Hall, 352 Ill.App.3d at 547-48, 287 Ill.Dec. 736, 816 N.E.2d 703; Peppers, 352 Ill.App.3d at 1006-07, 288 Ill.Dec. 502, 817 N.E.2d 1152; Ramos, 353 Ill.App.3d at 153-54, 288 Ill.Dec. 460, 817 N.E.2d 1110; Edwards, 353 Ill.App.3d at 484, 288 Ill.Dec. 879, 818 N.E.2d 814; Foster, 354 Ill.App.3d at 571, 290 Ill.Dec. 421, 821 N.E.2d 733. On this ground, we conclude the statute is constitutional.
For the foregoing reasons, we affirm the decision of the circuit court of Cook County.
Affirmed.
CAHILL, P.J., and O'MALLEY, J., concur.