2022 IL App (1st) 20-0419-U

No. 1-20-0419

Order filed June 30, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) <br> ) | Appeal from the Circuit Court <br> of Cook County. |
| Plaintiff-Appellee, | ) <br> ) | |
| vs. | ) <br> ) | No. 09 C 660079 |
| HERBERT WILLIS, | ) <br> ) | Honorable <br> Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1  *Held*: The circuit court's second-stage dismissal of defendant's postconviction petition is affirmed where defendant failed to make a substantial showing that his constitutional right to effective assistance of counsel was violated.

¶ 2  Defendant, Herbert Willis, appeals the second-stage dismissal of his petition filed pursuant to the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)). On appeal, Willis contends the circuit court erred in dismissing his petition where he made a substantial showing that his constitutional right to effective assistance of counsel was violated when his trial counsel failed to discuss the affirmative defense of self-defense with him and failed to assert the

defense at trial. Alternatively, Willis alleges he received ineffective assistance when his postconviction counsel violated Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 3    For the following reasons, we affirm the circuit court's second-stage dismissal of defendant's postconviction petition.[1]

¶ 4                                        I. BACKGROUND

¶ 5    We discuss only the facts necessary for our disposition of the issues in this appeal. For a more thorough discussion of the facts as they relate to pretrial matters, see Willis's direct appeal. *People v. Willis*, 2012 IL App (1st) 102111-U.

¶ 6    Willis was charged with, *inter alia*, attempted first degree murder, aggravated discharge of a firearm, and aggravated battery with a firearm for personally shooting 17-year-old Angelique Mitchell on or about December 19, 2008. Willis filed a motion to quash, arguing that his warrantless arrest was made without probable cause. Following a hearing on the motion, the trial court denied Willis's motion to quash.

¶ 7    At Willis's bench trial, Mitchell and her friends—Tandria Wade and Kenya Anderson— testified that they were hanging out with Shaunte Keys and Kenyatta Ferguson on the evening of December 19, 2008 at Eleventh Street in Ford Heights. As the girls were walking along Eleventh Street, a two-way street with traffic running east and west, Mitchell observed her cousin "Pumpkin" (Delondre) near the corner of the street. Delondre was with his friends "T-Pain," Jimmy, Mike, and Jerrell. The two groups stopped and conversed for approximately 20 to 30 minutes. As they stood talking in front of a fence near abandoned public houses, Wade and Anderson observed a light metallic four-door vehicle drove by, coming from the east. Shortly

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

thereafter, the vehicle drove slowly by a second time,[2] coming from the west. From behind, Mitchell heard "T-Pain" yell "there he go," and it was then that she first noticed the vehicle. The vehicle then "crept" into the oncoming lane, drove up near the curb and stopped in the vicinity of the group, with the driver's side door pointing towards Mitchell. Mitchell observed the vehicle was pulled slightly onto the snowy curb, approximately 10 feet from the group. Mitchell testified that one of the boys tried to hit the vehicle with a snowball or a stick, but nobody in the group displayed a firearm nor had they made any sort of verbal threat. At some point, Mitchell observed "T-Pain" walk towards the rear of the vehicle. Wade and Anderson likewise testified they did not witness anyone in the group with a firearm, nor did anyone make any threats. They additionally stated they did not see anyone throw anything towards the vehicle, nor did they observe anyone walk towards the vehicle.

¶ 8       The driver's side window lowered[3], and Mitchell observed the driver "smirking." The driver, whom Mitchell, Wade, and Anderson identified in court as Willis, then began shooting towards the group on the sidewalk. Anderson described Willis as having his left arm "leaning on the window thing. He had pointed his right arm on top of it and started shooting out the window." The firearm initially jammed, making a clicking noise twice, before Willis fired three more times in their direction. Mitchell and Anderson witnessed the flashes from the end of the firearm, and they crouched to the ground. While Wade could not distinguish the firearm, she heard gunshots and observed "a flash of fire" from the lowered window. The vehicle then pulled away from the group "very fast," and Mitchell realized she had been shot. She felt a burning sensation and

_____

[2]Wade testified her attention was drawn to the vehicle the second time because she had already seen the vehicle drive by once and one of the boys she was with had "pointed it out the first time."
[3]There was conflicting testimony regarding when the window lowered; Wade and Anderson testified it was down the first time the car drove by, whereas Mitchell did not think it was lowered until some point after the car stopped near the group.

observed blood on her lower left leg. Delondre carried Mitchell down the street, where an ambulance eventually arrived to transport her to the hospital. She was treated for a bullet in her leg but was told by her treating physician that it could not be removed without doing greater damage.

¶ 9        Mitchell, Wade, and Anderson each testified that they witnessed or heard the driver shooting, they observed his face, and they all identified Willis both in a lineup[4] and at trial as the shooter. Further, all three testified that prior to the shooting, they had never seen Willis and did not know him.

¶ 10        Cook County Sheriff's Police Department detective Darryl Manning testified that he investigated the Mitchell shooting on December 19, 2008. After arriving at the scene, other police officers apprised him that the shooter was an African American male named Herbert. Manning interviewed Wade, who informed him that the shooter was Herbert Willis of Sauk Village.[5] Police detectives later made two visits to Willis's residence, but Willis was not present either time. Willis was later apprehended by the Sauk Village Police Department, and Manning subsequently interviewed him. Manning stated that when he first spoke with Willis, Willis admitted that he owned a gold Buick Regal, but he claimed to not remember what he was doing the night of the shooting. Later, Willis alleged he was home at the time of the shooting. However, after Manning informed him that he had thrice been identified in the lineup as the shooter, Willis confessed to the shooting.

---

[4]All three girls separately viewed a lineup.

[5]Wade explained to Manning that she had learned Willis's name from several boys in the crowd who knew Willis from high school. These boys subsequently left the scene before they could be interviewed and police efforts to identify and locate them were unsuccessful.

¶ 11    Willis informed Manning that he was driving around Ford Heights on December 19, 2008 when he ran into an old friend, Cee-Cee,[6] at a Citgo Gas Station. He agreed to give Cee-Cee a ride to her residence, and, on the way, he observed a group of guys he went to school with on 11th Street. After he dropped Cee-Cee off, he drove eastbound down 11th Street past the group of guys, where he observed Delondre—whom he had formerly fought with at high school. As one of the guys from the group approached his car, Willis lowered his window and fired three shots from a "32 revolver." Willis then fled the scene and drove to Indiana, where he dismantled the firearm and discarded it in a sewer. Finally, Willis related, he drove to his sister's house in Cook County.

¶ 12    Assistant State's Attorney (ASA) Jason Carlstadt testified that, on December 27, 2008 at approximately 4:45 p.m., he met with and took a statement from Willis. In that verbal statement, Willis admitted to driving down 11th Street when he spotted Delondre and subsequently shot his firearm three times in Delondre's direction. After, Willis drove his vehicle to Indiana where he broke down his firearm and disposed of it in a sewer. Willis further conceded that he never observed anyone on the corner with a firearm or any other type of weapon and maintained that he did not see the group of girls on the corner that day. Carlstadt further testified that Willis refused to make a handwritten statement following the verbal statement. Additionally, Carlstadt received corroborating evidence for Willis's statements from the eyewitness's testimonies.

¶ 13    Following the trial, Willis was found not guilty of attempted first degree murder but was convicted of both aggravated battery with a firearm and aggravated discharge of a firearm. Subsequently, he was sentenced to a term of nine years' imprisonment on the aggravated battery conviction.

---

[6]Manning similarly explained that Willis was unable to give the Sheriff's officers Cee-Cee's real name or the address where she lived. Subsequent efforts to identify and locate her were unsuccessful.

¶ 14    On direct appeal, Willis argued that the trial court erred in denying his motion to quash his arrest for lack of probable cause. We rejected Willis's contention, finding that the trial court did not err in denying his motion to quash, where (1) named eyewitnesses to the shooting told police they could identify the shooter and later proved that assertion with post-arrest lineup identifications, (2) unnamed witnesses provided Willis's first name to police officers, and (3) absent witnesses told other witnesses Willis's full name and town of residence, which police confirmed with a computer search. Accordingly, we affirmed the trial court's judgment on October 17, 2012. *People v. Willis,* 2012 IL App (1st) 102111-U.

¶ 15    In January 2013, Willis filed an initial *pro se* postconviction petition pursuant to the Act. 725 ILCS 5/122-1 *et seq*. In his filing, Willis alleged that (1) he received ineffective assistance of counsel when trial counsel failed to (a) discuss the affirmative defense of self-defense with him, (b) raise self-defense at trial, (c) interview occurrence witnesses, and (d) allege that his custodial statement was taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); and (2) mandatory supervised release (MSR) did not apply to his sentence.

¶ 16    Some months later, the circuit court docketed Willis's petition and appointed postconviction counsel. On July 26, 2019, after multiple attorney reassignments, Willis's appointed attorney filed an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate certifying that he had "consulted with the petitioner, Herbert Willis, by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights." Counsel further certified he had "examined the record of the proceedings at the trial and/or guilty plea, including the common law record, report of proceedings and any exhibits ***." Counsel did not file an amended postconviction petition.

¶ 17    On October 25, 2019, the State filed a motion to dismiss Willis's postconviction petition. In its motion, the State argued that Willis failed to meet the requirements under *Strickland v. Washington*, 466 U.S. 688, 694 (1984), to show ineffective assistance of trial counsel, where the record indicated Willis's statement was not made under duress, and he failed to provide affidavits from proposed witnesses. The State further argued his other ineffective assistance claims were waived and contended there was no due process violation for the imposition of MSR, which attaches by operation of law to any sentence imposed by a trial court.

¶ 18    The circuit court subsequently heard arguments on the State's motion to dismiss Willis's petition. The circuit court issued an oral ruling on February 21, 2020, granting the State's motion to dismiss Willis's petition. Specifically, the circuit court rejected Willis's claims of ineffective assistance of counsel, finding that counsel's actions were based on trial strategy and determining that Willis failed to demonstrate prejudice. The court likewise rejected Willis's challenge to his MSR term, finding that MSR terms attach by operation of law to any sentence imposed by the trial court. On that same date, Willis filed a timely notice of appeal.

¶ 19                                II. ANALYSIS

¶ 20    On appeal, Willis contends that the circuit court erred in dismissing his petition where he made a substantial showing that his constitutional right to effective assistance of counsel was violated when his trial counsel (a) failed to consult with him regarding a potential claim of self-defense and (b) failed to assert the affirmative defense of self-defense at trial. Alternatively, Willis argues his postconviction counsel was ineffective for failing to support his arguments against his trial counsel with an affidavit from Willis. Willis does not challenge the dismissal of his MSR claim on appeal.

¶ 21 The Act (725 ILCS 5/122-1 *et seq.* (West 2012)) enables a criminal defendant to challenge their conviction based on alleged constitutional violations that occurred during their trial or at sentencing. *People v. Dupree*, 2018 IL 122307, ¶ 28. Proceedings under the Act are divided into three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, a petitioner need only assert enough facts to set forth the gist of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The circuit court has 90 days to review a petition at the first stage. 725 ILCS 5/122-2.1(a)(2) (West 2012). Issues decided on direct appeal are barred by *res judicata* and issues that could have been raised, but were not, are forfeited. *People v. Blair*, 215 Ill. 2d 427, 442 (2005). If the circuit court—after a threshold evaluation of the allegations—finds that the petition has made an arguable constitutional claim, the petition then advances to the second stage and petitioner may be appointed counsel. *People v. Tate*, 2012 IL 112214, ¶ 10. Alternatively, if the court finds that the petition is frivolous or patently without merit, the court may dismiss the petition. *Id*. If the petition is not dismissed within the proscribed 90-day period, it must be docketed for further consideration. 725 ILCS 5/122-2.1(b) (West 2012).

¶ 22 At the second stage, appointed counsel is required to perform three specific tasks, pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), to ensure a petitioner receives a reasonable level of assistance. *People v. Smith*, 2020 IL App (1st) 181220, ¶ 15. After counsel has made any necessary amendments to the petition, the State enters the proceedings and shall file an answer or motion to dismiss the petition. 725 ILCS 5/122-5 (West 2012). "During the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation." *Domagala*, 2013 IL 113688, ¶ 35. A substantial showing means the allegations, if proven at an evidentiary hearing, would entitle the petitioner to relief. *Id*. The court does not resolve evidentiary questions, nor does it engage in any fact-finding or credibility determinations.

*Id*. Instead, all well-pled factual allegations are taken as true unless positively rebutted by the trial record. *Id*. A petition is advanced to the third stage—an evidentiary hearing—only when the allegations, supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2012)), make a substantial showing of a constitutional deprivation. *Dupree*, 2018 IL 122307, ¶ 28. We review the second-stage dismissal of a postconviction petition *de novo*. *Id*; see *People v. Parada*, 2020 IL App (1st) 161987, ¶ 18 (*de novo* review means we analyze the petition's claims the same as a trial court would).

¶ 23                     A. Ineffective Assistance of Trial Counsel

Willis first argues that the circuit court erred in dismissing his petition where he made a substantial showing that his constitutional right to effective assistance of counsel was violated. He alleges that his attorney was objectively unreasonable for failing to consult with him regarding a claim of self-defense and for failing to raise that affirmative defense at trial. In particular, Willis alleges that after the circuit court denied his motion to quash arrest and suppress evidence, a reasonable doubt defense was "dubious." He insists that an objectively reasonable attorney would have instead asserted a self-defense claim in light of the factual allegations Willis alleges in his petition.

¶ 24       Ineffective assistance of counsel claims are resolved pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance, a defendant must establish both "that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23. Specifically, a defendant must show that "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

If a defendant cannot establish prejudice, their ineffective assistance claim necessarily fails. See *People v. Cherry*, 2016 IL 118728, ¶ 31 (failure to establish either prong precludes a finding of ineffectiveness). A reviewing court must be highly deferential in its scrutiny of counsel's performance. *Strickland*, 466 U.S. at 689.

¶ 25        Self-defense is an affirmative defense in which a defendant claims that they were justified in their use of force. *People v. Gray*, 2017 IL 120958, ¶ 50. Pursuant to section 7-1(a) of the Criminal Code of 2012, "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2012). However, a person "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." *Id.* Self-defense exists where "(1) force was threatened against the defendant, (2) the defendant was not the original aggressor, (3) the risk of harm was imminent, (4) the threatened force was not lawful, (5) the defendant subjectively believed that the use of force was necessary to avert the danger, and (6) the defendant's belief was objectively reasonable." *People v. Hampton*, 2021 IL App (5th) 170341, ¶ 95 (citing *People v. Washington*, 2012 IL 110283, ¶ 35).

¶ 26        Whether to pursue a particular theory of defense is a decision made by trial counsel, and this choice constitutes a matter of trial strategy. *People v. Little*, 2021 IL App (1st) 181984, ¶ 52. More specifically, "it is counsel's decision, as a matter of trial strategy, whether to assert an affirmative defense of self-defense." *People v. Edmondson*, 2018 IL App (1st) 151381, ¶ 40. "A decision that involves a matter of trial strategy typically will not sustain a claim of ineffective representation." (Internal quotation marks omitted.) *People v. Sanchez*, 2014 IL App (1st) 120514,

¶ 30 (quoting *People v. Redmond*, 357 Ill. App. 3d 256, 260 (2005)). Accordingly, Willis's attack on his trial counsel's strategy not to raise the affirmative defense at trial cannot form the basis of a claim of ineffective assistance of counsel. See *Edmondson*, 2018 IL App (1st) 151381, ¶ 40 (holding that counsel's decision not to raise an affirmative defense such as self-defense is a matter of sound trial strategy). Further, the record here reveals that, on several occasions, counsel communicated with Willis and discussed both his case and potential strategies. The record likewise demonstrates that counsel's strategy was to rely on the State's inability to prove Willis guilty. This is a reasonable trial strategy. See *Sanchez*, 2014 IL App (1st) 120514, ¶ 30.

¶ 27 In support of his claim that he was acting in self-defense, Willis argues that someone from the group he approached threw an item at his vehicle. He contends he "did nothing more than pull up to a group of people in attempt to park his car," and that he was then "assaulted *** in his opinion threatened." Willis further alleges that an unidentified male approached his vehicle "in an aggressive and threatening manner," putting him in fear of imminent danger or death. He believed the probability for criminal activity was "extremely high, if not guaranteed," because the "area is a high crime, drug and gang infested area notorious for its propensity for violence." Willis, however, concedes that he did not see anyone in the group with a firearm—or any other weapon.

¶ 28 Even assuming trial counsel never directly discussed an affirmative self-defense claim with Willis, the evidence presented at trial—including Willis's own statements to Manning and ASA Carlstadt—demonstrates that he is incapable of proving *any*, yet alone all, of the requisite elements of self-defense. Willis is unable to demonstrate that, had trial counsel argued self-defense, there was a reasonable probability that the outcome of his trial would have been different. Based upon the facts in this case, counsel's strategic decision not to raise self-defense was wholly reasonable. See *People v. Edmondson*, 2018 IL App (1st) 151381, ¶ 40.

¶ 29        Every eyewitness interviewed by police officers stated unfailingly that nobody in the group had a weapon. Further, Mitchell, Wade, and Anderson all testified consistently at trial that no one in the group did or said anything that could reasonably be interpreted as a threat to Willis. They all stated that there was no substantial altercation of any kind between Willis and the group standing on the street—nobody made any sort of verbal threat, nor did anyone have a firearm or other weapon. Mitchell was the only person to offer testimony that someone in the group had thrown either a snowball or a stick towards the vehicle and that "T-Pain" had begun walking towards the vehicle. This was the only testimony elicited that *any* of the young adults present did anything that could be remotely interpreted as threatening. None of the other witnesses' testimonies supported Willis's assertions; rather, their testimonies demonstrate that Willis was the instigator. All interviewed eyewitnesses stated that Willis was the one and only aggressor—he drove down 11th Street, passing by the group once before turning around and approaching a second time, he crossed into oncoming traffic lanes to ensure he was close to the group, he parked his vehicle and leaned out his open car window, and then pulled the trigger of his firearm five times into the group of high schoolers. Based upon the facts in this case, counsel's strategic decision not to raise self-defense was wholly reasonable.

¶ 30        Moreover, the evidence at trial demonstrated that Willis engaged in several acts inconsistent with a person acting in self-defense. First, Willis drove by the group twice. If, as Willis contends, he was deathly afraid that he would be harmed because he was in "a high crime, drug and gang infested area notorious for its propensity for violence," the rational choice would have been to continue driving away from the group on the street. Instead, Willis chose to not only drive by a second time, but to cross into the oncoming lane to pull up next to the group. Additionally, after the shooting, Willis fled the scene—and the state.

¶ 31    Willis, by his own admissions, left the scene of the shooting, disassembled the firearm he used to shoot at the group, and deliberately disposed of the firearm components in a sewer after absconding to Indiana. Flight from the scene of the crime, as well as disposal of the firearm, is "competent circumstantial evidence that refutes the theory that [a] defendant acted in self-defense." *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 59. A rational fact finder could infer from this evidence that Willis did not in fact shoot towards Delondre because he believed that his actions were essential for self-defense. See *Id.* (noting that "[t]he fact that defendant disposed of the weapon also indicates a guilty state of mind and knowledge that he did not merely act in self-defense, even under an unreasonable belief in self-defense"); *People v. Seiber*, 76 Ill. App. 3d 9, 14 (1979) (remarking that the defendant's flight from the scene and disposal of a pistol was evidence of consciousness of guilt, which negates a claim of self-defense). The State also presented evidence that Willis initially denied being present during the shooting, claiming first that he could not remember what he was doing the night of the shooting and, second, that he was at home during the shooting. These false exculpatory statements made to the sheriff's officers provide additional support for counsel's apparent conclusion that Willis was not acting in self-defense when he approached the group of high schoolers, aimed his firearm at them out the window, and pulled the trigger five times.

¶ 32    Even in a light most favorable to Willis, we cannot find that his account of the shooting would establish the gist of a claim of self-defense. That is, even assuming *arguendo* that the act of throwing a snowball at Willis's vehicle was an act of aggression that led Willis to believe he needed to defend himself against the imminent use of unlawful force, it is indisputable that Willis responded to the confrontation with excessive force. Willis pulled the trigger of his firearm five times while aiming at a group of unarmed young adults. When a person responds in such a manner

"that one is no longer acting in self-defense but in retaliation, the excessive use of force renders one the protagonist; a nonaggressor has a duty not to become the aggressor." *People v. Belpedio*, 212 Ill. App. 3d 155, 161 (1991). In the instant case, the trial evidence clearly established that Willis's use of deadly force against the group was not justified as an act of self-defense. Specifically, the evidence neither demonstrated that the force Willis used was necessary nor that there was an imminent danger of harm when Willis shot toward the group. Indeed, rather than remain near a group that had thrown a snowball at his vehicle, Willis could have simply driven away from the situation, or even remained in his vehicle and phoned the police. He instead chose to roll down his window and engage them with a firearm. Under these circumstances, any subjective belief Willis may have had that a danger requiring him to use lethal force existed would not have been objectively reasonable.

¶ 33        Given these facts, it was a perfectly reasonable decision for counsel to conclude that the fact finder would not believe Willis acted in self-defense where it was obvious that Willis could not prove the requisite elements of self-defense—no unlawful force was threatened against him, he was the aggressor, there was no imminent danger of harm, the use of force was unnecessary, and Willis's purported belief that a danger existed was objectively unreasonable. In his postconviction petition Willis further speculates that, had his counsel properly investigated other eyewitnesses (the same eyewitnesses the police were unable to locate and interview), their potential testimony might have "unveiled" a possible self-defense claim. His petition failed to include an affidavit from any proposed eyewitness who would testify that a weapon was present and visible the night Willis shot at the group. Likewise, he failed to include any affidavits from any eyewitness who would testify that anyone in the group made a verbal threat towards Willis.

¶ 34    Here, Willis has failed to demonstrate that counsel was objectively unreasonable for failing to (1) consult with Willis regarding a self-defense strategy, and (2) to raise that affirmative defense at trial. Furthermore, Willis suffered no prejudice due to his trial counsel's failure to raise the affirmative defense, where Willis clearly could not prove the requisite elements of self-defense. As such, Willis was not deprived of the effective assistance of counsel. *Strickland*, 466 U.S. at 697.

¶ 35                    B. Unreasonable Assistance of Postconviction Counsel

¶ 36    Willis alternatively argues that his postconviction counsel provided unreasonable assistance by failing to amend his *pro se* postconviction petition. Specifically, Willis contends that the record rebuts the presumption of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) that was created by counsel's 651(c) certificate.

¶ 37    There is no constitutional right to the assistance of counsel in a postconviction proceeding. *People v. Addison*, 2021 IL App (2d) 180545, ¶ 25. Instead, "petitioners are entitled only to the level of assistance granted by the Act, which provides for a reasonable level of assistance." *Id.* Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) provides a safeguard to ensure that petitioners receive the required level of assistance. Rule 651(c) requires postconviction counsel to certify that they "ha[ve] made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." The rule further necessitates that counsel shall consult with the petitioner to ascertain their contentions of deprivation of constitutional rights, examine the record of the proceedings at trial and, if necessary, amend the petition to ensure the petitioner's arguments are adequately presented. *Id.* Counsel is not required "to advance frivolous or spurious claims on a defendant's behalf." *People v. Bryant*, 2022 IL App (2d) 200279, ¶ 17. A certificate filed pursuant to Rule 651(c) creates a rebuttable presumption that

postconviction counsel rendered reasonable assistance. *People v. Smith*, 2022 IL 126940, ¶ 29. It is the petitioner's burden to overcome that "presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 38    Willis emphasizes that counsel's Rule 651(c) certificate was not filed until six years after counsel's appointment. The record indicates that the Public Defender's Office—which was appointed to represent Willis—reassigned his matter to at least three different attorneys over that span of time. While there is no doubt that six years is a long time for Willis to await litigation of his postconviction petition, the delay does not appear attributable to the attorney who ultimately filed the Rule 651(c) certificate.

¶ 39    Willis alleges that postconviction counsel should have amended his *pro se* petition, where the affidavit Willis attached only verified the petition but did not provide factual allegations to support his claims. He claims that the creation of a better affidavit would have ensured his ineffective assistance claims were adequately presented.

¶ 40    The State counters that an affidavit from Willis was attached to his *pro se* petition, even though there is no supporting affidavit in the record. In support of the State's argument, they cite to counsel's statement during arguments on the State's motion to dismiss Willis's petition that "based on these issues that obviously could raise an issue or a notion of self-defense, I think it lends more credibility to Mr. Willis' affidavit of him swearing to the fact that his lawyer never discussed self-defense with him or the possibility of testifying in self-defense." As there is no such affidavit before us in the record, we will not consider anything that may have been contained within said affidavit. *People v. Gossage*, 80 Ill. App. 3d 36, 38 (1980) (noting that generally, references to matters outside the record will not be considered by a reviewing court).

¶ 41        " 'Where, as here, the presumption of reasonable assistance is present, the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition.' " *People v. Landa*, 2020 IL App (1st) 170851, ¶ 57 (quoting *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30). As detailed above, the record demonstrates that trial counsel was not ineffective for failing to consult with Willis regarding a self-defense theory and for failing to present the affirmative defense at trial. Given these facts, no amendment to the postconviction petition was necessary. Contrary to Willis's contentions, an affidavit drafted by counsel could not have satisfied the legal elements of self-defense given the facts in this case. We see no reason to disregard counsel's Rule 651(c) certificate where counsel certified he consulted with Willis, and examined the transcript of trial proceedings, the common law record, and all exhibits before determining there was no need to amend the petition. Moreover, as we have already determined Willis's underlying claim is meritless, he cannot demonstrate prejudice. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 61. Accordingly, for these reasons, we find Willis did not receive ineffective assistance of postconviction counsel.

¶ 42                                III. CONCLUSION

¶ 43        Based on the foregoing, we affirm the circuit court's judgment dismissing Willis's second-stage postconviction petition.

¶ 44        Affirmed.