# Illinois Official Reports

## Appellate Court

---

### *People v. Sanchez*, 2014 IL App (1st) 120514

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUIS SANCHEZ, Defendant-Appellant. |
| | |
| District & No. | First District, Third Division<br>Docket No. 1-12-0514 |
| | |
| Filed | February 26, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for resisting a peace officer following a jury trial on a charge of aggravated battery of a peace officer was upheld over defendant's contentions that resisting a peace officer is not a lesser-included offense of aggravated battery and that his counsel was ineffective in failing to request an instruction on self-defense, since all of the elements of resisting a peace officer were embodied in the charge of aggravated battery of a peace officer and defendant's theory of the case that he did not use force against any police officers was contrary to a claim that he acted in self-defense during his encounter with officers who were investigating a shooting. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-9865; the Hon. Nicholas R. Ford, Judge, presiding. |
| | |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier and Kate E. Schwartz, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and April K. Gonzales, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Neville and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1     A jury convicted defendant Luis Sanchez, who was charged with aggravated battery of a peace officer (720 ILCS 5/12-4(b)(18) (West 2010)), of the lesser-included offense of resisting a peace officer. The court sentenced Sanchez to 364 days in Cook County jail. Sanchez raises two grounds for reversing his conviction: (1) resisting arrest does not qualify as a lesser-included offense of aggravated battery; and (2) denial of effective assistance of trial counsel. We affirm.  The charge for aggravated battery of a peace officer embodied all the necessary elements for the lesser-included offense of resisting a peace officer. As to defendant's trial counsel, defendant does not have a claim for ineffective representation. His counsel's failure to ask for a self-defense jury instruction was entirely proper under the circumstances.

¶ 2                                          BACKGROUND

¶ 3     This case arises out of a police investigation into a June 8, 2011, shooting in the Avondale Park neighborhood of Chicago. In the course of the investigation, several police officers went to a home at 2920 North Sawyer, Chicago, in the early morning hours of June 9, where defendant Luis Sanchez was asleep. When the officers left the house, Sanchez was in handcuffs, charged with aggravated battery and resisting or obstructing a police officer. Before trial, the State dismissed the felony resisting charge and proceeded with the felony count of aggravated battery. During trial, the State and the defense offered different versions of the events that led up to Sanchez's arrest.

¶ 4     The State's first witness, Commander Joseph Salemme, testified that on June 9, 2011, at about 2:30 a.m., he and 9 or 10 police officers from the Area Five detective division went to Sanchez's home at 2956 North Sawyer, Chicago, to interview him about a shooting in Avondale Park the day before. Not finding Sanchez at home, Salemme and the others proceeded to a house down the block at 2920 North Sawyer, where Sanchez's parents and siblings lived. Salemme wore a shirt and tie and a black bulletproof vest and carried a firearm. Some of the police officers with him wore bulletproof vests and department-issued uniforms,

including black battle-dressed uniforms, name plates, stars, a Chicago police department patch on the left arm and a City of Chicago flag on the right arm.

¶ 5      Salemme said when they got to 2920 North Sawyer, one of the officers knocked on the front door and the person who answered allowed them in. Before Salemme entered the living room he heard an officer say, "Police. Wake up. Police. Wake up." Salemme then heard Sanchez yell, "Fuck you. You are not going to put that shooting on me." When Salemme entered the living room, he saw Sanchez standing in front of a couch, surrounded by police officers. Salemme then saw Sanchez punch police officer George Junkovic in the chest. Salemme saw Junkovic take two or three steps backward, then heard him yell "taser, taser" just before twice deploying his taser on Sanchez. Salemme said Sanchez fell to the floor, arms flailing, and refusing to comply with orders, until several officers restrained and handcuffed him.

¶ 6      Officer Junkovic testified he was with the gang enforcement unit on June 9, 2011, and that in the course of investigating the previous day's shooting, at about 2:30 a.m., he went to 2920 North Sawyer with six to eight officers to interview Sanchez. Junkovic followed two officers into the house. On entering the living room, he saw Sanchez sleeping on a couch. Junkovic said he tapped Sanchez on the shoulder and said, "Chicago Police. Wake up." Junkovic said Sanchez looked at him and said, "Fuck you all bitches. I ain't going down for that shooting." Sanchez then stood up and swung a fist at Junkovic which missed. Sanchez swung again and punched Junkovic in the chest, causing Junkovic to stumble backward. Junkovic said he took out his Taser gun, yelled "taser, taser" and then deployed his Taser twice, causing Sanchez to fall to the ground. Junkovic said he told Sanchez to put his hands behind his back but Sanchez did not comply and had to be restrained by officers. Junkovic said Sanchez tightened his hands and flailed his arms, preventing the officers from getting his hands behind his back.

¶ 7      After the State rested, the defense presented a motion for a directed verdict. The trial court denied the motion. The defense's case included five witnesses. First, Sanchez's girlfriend, Lisette Aguilar, testified that on June 9, 2011, several police officers came to her apartment at 2956 North Sawyer, where she lived with Sanchez and her two children. She said the officers, who were wearing all black clothing and pointing guns at her, pushed their way into the apartment. The officers told her they were looking for Sanchez. She told them where he was, and they left.

¶ 8      Defendant's brother, Manuel Sanchez, Jr., testified that he was living at 2920 North Sawyer on June 9, 2011, with his mother, father, sister, brother-in-law, and nephew. A loud banging at about 2:30 a.m. woke him and he opened his bedroom door. He saw flashlights and heard someone yelling, "Open the door!" He went to the front door and opened it slightly and saw a man in black clothing. The man put his hand on Manuel's chest and asked him his name. Manuel said he told the officer his name and saw the officer reach for his gun. The officer asked Manuel who was behind the door and Manuel said that his brother and sister were inside sleeping. Manuel said the officer pushed him back and entered the home, followed by about eight officers.

¶ 9      Manuel said Sanchez was asleep on the couch when the officers entered the living room. Two officers picked up Sanchez and threw him on the floor. Manuel said he saw the officers pin Sanchez down but could not see anything else because the officers formed a wall around Sanchez and pushed Manuel and other family members into the kitchen. Manuel then heard a

Taser and saw the officers handcuff Sanchez and take him out of the house. Manuel testified that he never saw his brother punch a police officer. On cross-examination, Manuel acknowledged that when he spoke to the police at the station later he did not tell them that the officers picked Sanchez up off the couch and threw him to the ground or that officers forced their way into the house.

¶ 10 During a break in testimony, the trial court conducted a jury instruction conference. The State requested a jury instruction for the lesser-included misdemeanor offense of resisting arrest. Defense counsel objected arguing that resisting arrest requires resisting a lawful or authorized act by the police and that the police's actions were not lawful or authorized. The trial court granted the State's request over defendant's objection, stating that "[t]he standard is only whether or not there is some evidence to support the lesser included [offense]."

¶ 11 The defense presented three additional witnesses, Sanchez's father, Manuel Sanchez, Sr., his sister, Trinidad Sanchez, and Sanchez himself. Manuel Sr. testified that at about 2:30 a.m. on June 9, 2011, he was asleep when he was awakened by a lot of noise outside. He looked out his window and saw men outside carrying guns. He testified that he went downstairs and initially said that when he entered the living room his view was blocked by men in black clothing. But he later said he saw his son, Luis, sleeping on the couch. Two or three officers woke Luis up, lifted him up, and threw him to the floor. Manuel Sr. said he then saw officers punch and kick Luis and take him out of the house. Manuel Sr. testified that he never saw Luis strike a police officer.

¶ 12 Trinidad Sanchez testified that on June 9, 2011, at 2:30 a.m., she was asleep on a couch in her family's living room and woke up when she heard banging on the doors and windows. She screamed for her brother, Manuel, who went to the front door. She then saw about 10 men dressed in black and carrying guns in their holsters enter the house and approach her brother, Luis, who was sleeping on the couch across from her. She saw two of the men grab Luis by the shoulders, shake him, and throw him to the floor. She testified she never saw Luis strike or punch anyone. On cross-examination, Trinidad agreed that she never saw the men punch or kick her brother.

¶ 13 Defendant Sanchez testified that on June 8, 2011, he was stopped and questioned by police officers while returning home from the store. He complied with the officers' questions and they permitted him to leave. Sanchez proceeded to his parents' house at 2920 North Sawyer for dinner. After dinner, Sanchez fell asleep on a couch in the living room. Sanchez said he was awakened by a shove in his back, followed by two people pulling him off the couch and throwing him to the floor before someone tased him. Sanchez testified that at the time he did not know the men were police officers. He said he never hit or punched any officer. While on the floor, Sanchez said the men stomped and kicked him. Photos taken on June 11, 2011, were introduced into evidence, depicting bruising on Sanchez's body that he did not have before June 9.

¶ 14 The defense rested. The State called two rebuttal witnesses. Detective John Graham testified that he was one of the officers investigating the June 8, 2011, shooting in Avondale Park and went to 2920 North Sawyer at 2:30 a.m. to interview Sanchez. Graham said he identified himself as a police officer to the person who opened the door and was allowed into the house. As he entered the living room, Graham saw Sanchez sleeping on the couch. Graham and Junkovic approached Sanchez and attempted to wake him. He and Junkovic announced

that they were police officers. Graham said Sanchez got to his feet and took a swing at Junkovic and missed but then swung again and hit Junkovic near the neck and collar bone. Graham said he was going to grab Sanchez, but Junkovic said to stand back and tased Sanchez. Sanchez fell to the floor and refused to comply with commands but that Graham and another officer restrained and handcuffed Sanchez. Graham said he did not punch or kick Sanchez or see any officers do so.

¶ 15 The State's other rebuttal witness, Detective Vidas Nemickas, was assigned to investigate the aggravated battery of Junkovic. On the evening of June 9, 2011, he interviewed defendant's brother, Manuel Sanchez, Jr., and his sister, Trinidad Sanchez. Nemickas testified that Manuel Jr. told him the police officers identified themselves when they came to the house and that he allowed them to enter. Manuel Jr. told him the officers tried to wake up Luis and that Luis resisted and flailed his arms as the officers tried to handcuff him. Nemickas said Manuel Jr. did not tell him that officers threw defendant to the floor. According to Nemickas, Trinidad Sanchez told him she knew the men who entered the house were police officers and that she saw Sanchez moving his arms away when the officers tried to arrest him.

¶ 16 The jury found Sanchez guilty of resisting a peace officer. After hearing arguments in aggravation and mitigation, the trial court sentenced him to 364 days in the Cook County jail. The trial court denied Sanchez's motion to reconsider the sentence. The defense moved for a new trial arguing, in part, that the jury's verdict ran against the manifest weight of the evidence and that permitting the State to instruct the jury on the lesser-included offense of resisting arrest without prior notice violated Sanchez's due process rights. The trial court denied the motion. This timely appeal followed.

¶ 17 ANALYSIS

¶ 18 Originally, Sanchez raised three grounds for reversing his conviction: (1) the trial court abused its discretion by permitting the State to submit a jury instruction regarding the lesser-included offense of resisting a peace officer; (2) resisting arrest did not qualify as a lesser-included offense of aggravated battery; and (3) denial of effective assistance of counsel because his attorney failed to ask for a self-defense jury instruction. In his reply brief, Sanchez withdraws the first argument. We address only the second and third arguments.

¶ 19 Lesser-Included Offense

¶ 20 Generally, a defendant may not be convicted of an uncharged offense. *People v. Ceja*, 204 Ill. 2d 332, 359 (2003). But when the evidence fails to prove beyond a reasonable doubt an element of the convicted offense, a reviewing court may enter judgment on a lesser-included offense, even where the lesser-included offense was not charged at trial. *People v. Kennebrew*, 2013 IL 113998, ¶¶ 21-22. The authority to enter judgment on a lesser charge comes from common law and Illinois Supreme Court Rule 615(b)(3) ("the reviewing court may *** reduce the degree of the offense of which the appellant was convicted"). *Kennebrew*, 2013 IL 113998, ¶ 21. In determining whether judgment may properly be entered on an uncharged lesser-included offense, we must use the charging instrument approach. *Kennebrew*, 2013 IL 113998, ¶ 32. Under this test, an offense may be deemed a lesser-included offense even though every element of the lesser offense is not explicitly contained in the indictment so as long as

the missing element can be reasonably inferred from the indictment allegations. *Kennebrew*, 2013 IL 113998, ¶¶ 30, 32. The charging instrument approach consists of two steps. *People v. Lipscomb*, 2013 IL App (1st) 120530, ¶ 11. First, the court determines whether the offense is a lesser-included offense by reviewing the charging instrument. We examine the indictment and determine whether the factual allegations provide a " 'broad foundation' " or " 'main outline' " of the lesser offense. *Kennebrew*, 2013 IL 113998, ¶ 30. If the charging instrument describes the lesser offense, the court then considers whether the evidence at trial sufficed to uphold a conviction on the lesser offense. *People v. Kolton*, 219 Ill. 2d 353, 361 (2006).

¶ 21    Sanchez focuses primarily on the second step in the charging instrument analysis, contending the evidence at trial does not support his conviction for resisting a peace officer, because he was not being arrested when he hit Junkovic. We disagree.

¶ 22    Because both elements of the charging instrument approach must be satisfied, we must determine whether the charged offense broadly describes the lesser-included offense. Sanchez was charged with aggravated battery of a peace officer. This offense is defined as the striking of a person who is known "to be an officer or employee of the State of Illinois, a unit of local government, or school district engaged in the performance of his or her authorized duties." 720 ILCS 5/12-4(b)(18) (West 2010). The information charging Sanchez specifically provided that he "intentionally or knowingly caused bodily harm to *** George Junkovic, to wit: struck George Junkovic knowing him to be an officer of a unit of local government, and he was a peace officer, to wit: Chicago police officer, while such officer was engaged in the performance of any of his official duties." The lesser offense for which Sanchez was convicted, resisting a peace officer, is defined as "knowingly resist[ing] or obstruct[ing] the performance of one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his [or her] official capacity." 720 ILCS 5/31-1(a) (West 2010).

¶ 23    Since both offenses require that a defendant act with knowledge that the person he or she is striking or resisting is an officer acting within his or her official capacity, it is evident, as Sanchez concedes, that aggravated battery broadly defines the offense of resisting a peace officer. Sanchez contends, however, that the similarity in the description of the offenses only results from the State's failure to specify a necessary element of aggravated battery, namely, the authorized duty Junkovic was engaged in when he was struck. Sanchez asserts that if the indictment stated that Junkovic was trying to interview a potential witness, rather than trying to arrest a suspect, the lesser-included offense would not fall into the general definition of aggravated battery. Sanchez fails to present any cases supporting this argument. The only case cited, *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 18, notes that the indictment specified that the police officer was engaged in a driving under the influence investigation, when the defendant grabbed and pushed the officer. It does not provide that the indictment *must* specify the nature of the authorized duty engaged in by the officer when struck.

¶ 24    In his second argument, which is similar to the first, Sanchez contends he cannot be convicted of the lesser-included offense of resisting arrest because, as the police officers acknowledged, they went to 2920 North Sawyer with the intention of only interviewing and not arresting him. Although a charge of resisting a peace officer often arises out of a defendant's failure to cooperate with police during an arrest, other scenarios apply as well. Under section 31-1 of the Criminal Code of 1961, a person commits the offense of resisting or

obstructing a peace officer when he or she "resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution of *any authorized act* within his [or her] official capacity." (Emphasis added.) 720 ILCS 5/31-1(a) (West 2010). While the officers did not arrive at the house with the intent to arrest Sanchez, they engaged in an "authorized act," within their "official capacity," by trying to interview him about the shooting in the neighborhood. This meets all of the elements of the charge for resisting a peace officer and given the similarities between the offense charged and the lesser-included offense, the first step in the charging instrument analysis has been satisfied.

¶ 25    The second step in the charging instrument approach also is satisfied. The evidence leading to the conviction supports the lesser-included offense of resisting a peace officer. The testimony conflicted as to what occurred in the early morning hours of June 9, 2011, at 2920 North Sawyer. According to the defense's theory, advanced by the testimony of defendant, his brother, father, and sister, Sanchez never punched or hit Junkovic or anyone else. They say the police forced the confrontation by charging into the house, and, finding Sanchez asleep on the couch in the living room, the police picked him up, threw him onto the floor, tased him, arrested him, and removed him from the home, all before anyone could figure out who the men were.

¶ 26    The State's witnesses, however, offered a dramatically different version. Salemme, Junkovic, and Graham testified that several of the police officers wore City of Chicago police uniforms and verbally identified themselves to Manuel Sanchez, Jr., who allowed them entrance into the house. The officers then woke up Sanchez and identified themselves before he jumped up, shouted an expletive, and punched Junkovic in the chest. Junkovic warned that he was deploying his Taser and tased Sanchez twice, causing Sanchez to fall to the floor. Sanchez then struggled with officers as they tried to restrain and handcuff him. The State's rebuttal witness, Detective Nemickas, cast doubt on the defense's theory. He testified that in an interview of defendant's brother and sister, Manuel Sanchez, Jr., and Trinidad Sanchez on the day of the arrest, they corroborated the police officers' assertions that the officers identified themselves when they entered the house and that Sanchez resisted as they tried to handcuff him.

¶ 27    The jurors heard all of the witnesses and assessed their credibility. Based on the evidence presented, it was not unreasonable for them to conclude that Junkovic engaged in an authorized act in his official capacity as a police officer when he and the other officers entered the house to interview Sanchez and Sanchez's actions in punching him in the chest constituted resisting a peace officer. Accordingly, both steps of the charging instrument analysis having been satisfied, the offense for which the jury convicted Sanchez, resisting a peace officer, qualified as a lesser-included offense of aggravated battery.

¶ 28                                    Ineffective Assistance of Counsel

¶ 29    Sanchez next contends the denial of effective assistance of counsel because his trial attorney failed to ask for an instruction that the "[u]se of excessive force by a police officer invokes the arrestee's right of self defense."

¶ 30    To establish a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's

deficient performance prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). To prevail, a defendant must satisfy both prongs. *People v. Harris*, 206 Ill. 2d 293, 304 (2002). The deficiency prong requires showing his counsel's performance so deficient as objectively measured against prevailing professional norms that counsel was "not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Easley*, 192 Ill. 2d 307, 317 (2000). "A decision that involves a matter of trial strategy typically will not sustain a claim of ineffective representation." (Internal quotation marks omitted.) *People v. Redmond*, 357 Ill. App. 3d 256, 260 (2005). A defendant must overcome a strong presumption that counsel's conduct constituted sound trial strategy and fell within the wide range of reasonable professional assistance. *People v. Jackson*, 205 Ill. 2d 247, 259 (2001) (citing *Strickland*, 466 U.S. at 689).

¶ 31     Defense counsel's decision not to raise the affirmative defense of self-defense constitutes a matter of sound trial strategy. To obtain a jury instruction on self-defense, a defendant must establish some evidence of six factors: (1) force is threatened against a person, (2) the person is not the aggressor, (3) the danger of harm was imminent, (4) the threatened force was unlawful, (5) the person actually and subjectively believed a danger existed that required the use of the force applied, and (6) the person's beliefs were objectively reasonable. *People v. Washington*, 2012 IL 110283, ¶ 35. Sanchez and other defense witnesses testified that Sanchez never hit Junkovic but instead had been awakened from a deep sleep, picked up, thrown to the floor, tased, handcuffed, and removed from the house. This theory that Sanchez did not use force against Junkovic or other officers does not mesh with asking the trial court to instruct the jury that Sanchez acted in self-defense during his encounter with the police. One element of a claim of self-defense is the use of force, and Sanchez denied using any force. In failing to request the instruction, trial counsel performed competently. Absent evidence of deficient performance by trial counsel, Sanchez cannot state a claim for ineffective assistance of this trial counsel.

¶ 32                                    CONCLUSION

¶ 33     For the reasons stated, we affirm Sanchez's conviction and sentence.

¶ 34     Affirmed.