2021 IL App (1st) 192208-U

No. 1-19-2208

Order filed August 19, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 6473 |
| | ) | |
| THOMAS LINDSEY, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction where the trial court properly denied his motion to suppress evidence.

¶ 2    Following a bench trial, defendant Thomas Lindsey was found guilty of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2018)) and sentenced to eight years' imprisonment. On appeal, defendant argues the trial court erred by denying his motion to suppress a firearm that officers recovered from his vehicle where the search lacked probable cause. Specifically,

defendant posits that an officer's testimony concerning the smell of cannabis inside the vehicle was unsupported by testimony regarding his experience in detecting cannabis or by other corroborating evidence. We affirm.

¶ 3    Defendant was charged by indictment with multiple offenses following a traffic stop on April 23, 2019. The State proceeded on one count of armed habitual criminal. Defendant filed a motion to suppress evidence, arguing the officers lacked probable cause to believe his vehicle contained contraband, he did not consent to the search, and the items seized were not in plain view. The court heard the motion simultaneously with defendant's bench trial.

¶ 4    Chicago police officer Nicholas Ardolino testified that, at the time of trial, he had been employed as a police officer for about three years. On April 23, 2019, at approximately 5 p.m., Ardolino was patrolling with his partner, Officer Matthew Marano, in plain clothes and driving a marked squad car near 71st Street and Western Avenue in Chicago. Ardolino looked through the front windshield of another vehicle and observed the driver operating a cellular telephone. He curbed the vehicle, and identified defendant in court as the driver and only occupant.

¶ 5    Ardolino approached the driver's side of the vehicle and Marano approached the passenger's side. Ardolino smelled the strong odor of cannabis coming from the vehicle, and asked defendant to lower the window. Defendant lowered the window a few inches, but Ardolino could not look inside because the windows were tinted. Ardolino requested defendant to exit the vehicle, but he refused, became "evasive," and made phone calls from his cellular telephone. Defendant refused to exit the vehicle for approximately six minutes, until three of his friends and family arrived, and he threw his keys to one of them. Another officer retrieved the keys from that person. Defendant was handcuffed and placed in a squad car. Marano then searched the vehicle and

recovered a semiautomatic handgun with an extended magazine, cannabis, and a "white-like substance" from the glove compartment. Defendant was then arrested and transported to the police station.

¶ 6      Ardolino identified body camera footage from his camera and Officer Farias's camera, which he testified accurately portrayed the events.[1] The State entered the footage into evidence and published portions of the footage, which is included in the record on appeal.

¶ 7      The published portion of Ardolino's body camera footage shows defendant in his vehicle for approximately six minutes. At Ardolino's request, defendant lowers the driver's side window two to three inches and provides his license and registration. Ardolino comments that he smells cannabis and requests defendant to exit the vehicle. Defendant does not lower the window further or exit for another five minutes, until another vehicle arrives containing members of his family.

¶ 8      The published portion of Farias's body camera footage shows defendant toss his keys to a woman standing a few feet away, and officers taking the keys from her.

¶ 9      On cross-examination, Ardolino testified that he lacked a warrant to search defendant or his vehicle. Ardolino smelled cannabis, but defendant made no furtive movements toward the glove compartment where the cannabis was recovered. Ardolino never observed defendant touch the firearm. On redirect examination, Ardolino testified that the front windshield of defendant's vehicle was not tinted.

¶ 10     Marano testified that, at the time of trial, he also had been a police officer for almost three years. His testimony corroborated Ardolino's regarding defendant using a handheld cellular telephone while operating the vehicle, the odor of cannabis from the vehicle, and defendant

---

[1] Officer Farias's first name does not appear in the report of proceedings.

throwing his keys to a bystander. Officer Ali, an assisting officer, retrieved the keys from the bystander and handed them to Marano.[2]

¶ 11    Marano used the keys to unlock the glove compartment, where he recovered a black Taurus G2 firearm with one chambered round and an extended magazine containing 24 additional rounds. Marano also recovered a clear plastic bag of suspect cannabis and a clear plastic bag of suspected crack cocaine. Marano inventoried the firearm at the police station and identified it in court.

¶ 12    Marano also identified footage from his body camera and testified that it accurately portrayed the events. The State entered the footage into evidence and published a portion of this footage, which is included in the record on appeal and depicts Marano retrieving the keys from another officer, opening the passenger door, and unlocking the glove compartment. Marano removes several items from inside the glove compartment. He then dons gloves, removes a black handgun with an extended magazine, and clears it. Marano testified that the video depicted him recovering the firearm and narcotics from the glove compartment after opening it with defendant's keys.

¶ 13    The State entered certified copies of defendant's prior convictions for robbery and unlawful use or possession of a weapon by a felon into evidence.

¶ 14    Defendant entered stipulations that Chicago police officer Fred Bojic, an evidence technician, would testify that he found ridge impressions on the magazine. Additionally, Chicago police officer Joseph Calvo would testify he examined a latent print on the firearm which, on comparison, "was not identified" to a copy of defendant's fingerprint palm card standard.

---

[2] Officer Ali's first name does not appear in the report of proceedings.

¶ 15    In closing, defense counsel argued that the position of the squad car showed the officers had to look across a lane of traffic to observe defendant through his windshield, and accordingly lacked probable cause to stop the vehicle. Further, no burning cannabis was recovered. The State responded that the officers never testified they smelled burnt cannabis, and asserted fresh cannabis "has its own odor." Moreover, on the body camera footage, Ardolino said he could smell cannabis minutes before its recovery, which added to his credibility.

¶ 16    The trial court denied defendant's motion to suppress and found him guilty of being an armed habitual criminal. In so holding, the trial court found that Ardolino testified he observed defendant holding a cellular telephone to his mouth through the windshield of the vehicle, rather than through the tinted side windows. The officers' testimony that they observed a traffic violation enhanced their credibility because the street was "very busy" and the odds of finding a person "with all this" were "astronomical." The officers had a right to stop the vehicle due to observing defendant violate a city ordinance. Further, when defendant partially lowered the window, the officers smelled marijuana, which "change[d]" the encounter from a traffic stop. Given the smell of marijuana, the court found it reasonable to search the passenger compartment for narcotics.

¶ 17    Defendant filed motions to reconsider the denial of his motion to suppress and for a new trial. Defendant argued the court erred because the video showed "it was not possible" for the officers to observe him talking on a phone from their vantage point in their squad car. Additionally, although the officers testified they smelled cannabis, no evidence of burning cannabis was recovered, and they did not question defendant as to whether he had a medical marijuana card. Further, citing *People v. Stout*, 106 Ill. 2d 77 (1985), defendant argued neither officer testified regarding his training or experience in detecting the odor of cannabis and thus there was no

foundation laid for that testimony. The court denied the motions, and following a hearing, sentenced defendant to eight years' imprisonment.

¶ 18       On appeal, defendant argues the trial court erred by denying his motion to suppress where neither testifying officer described any training or experience detecting the smell of cannabis and, accordingly, the officers lacked probable cause for the search that recovered the firearm.

¶ 19       We review rulings on motions to suppress evidence under a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). First, a reviewing court gives great deference to a trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542. "A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." *Luedemann*, 222 Ill. 2d at 542. Accordingly, we review the trial court's legal ruling as to whether suppression is warranted *de novo*. *Luedemann*, 222 Ill. 2d at 542. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 20       "The defendant bears of the burden of proof on a motion to suppress." *People v. Cregan*, 2014 IL 113600, ¶ 23. Where the motion alleges an unlawful search, "the defendant must establish both that there was a search and that it was illegal." *People v. Brooks*, 2017 IL 121413, ¶ 22. If the defendant makes this showing, "the burden shifts to the State to present evidence to counter the defendant's *prima facie* case." *Brooks*, 2017 IL 121413, ¶ 22. The ultimate burden of proof, however, rests with the defendant. *Brooks*, 2017 IL 121413, ¶ 22.

¶ 21       The fourth amendment to the United States Constitution establishes the right to be secure against unreasonable searches and seizures. U.S. Const., amend. IV. Generally, a search is *per se*

unreasonable if conducted without a warrant supported by probable cause, but courts have recognized several exceptions to the warrant requirement. *People v. Hill*, 2020 IL 124595, ¶ 20. For example, courts have found that certain circumstances may render a warrantless search or seizure reasonable when "faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like." *People v. Jones*, 215 Ill. 2d 261, 269 (2005). Since automobiles are mobile, courts have long distinguished the search of automobiles from the search of buildings. *People v. Wolf*, 60 Ill. 2d 230, 233-34 (1975) (citing *Carroll v. United States*, 267 U.S. 132 (1925)). Accordingly, courts apply an "automobile exception" to the warrant requirement where officers have probable cause to believe the automobile contains evidence of criminal activity subject to seizure. *People v. Contreras*, 2014 IL App (1st) 131889, ¶ 28.

¶ 22    Probable cause requires that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person to believe the automobile contains evidence of criminal activity. *Hill*, 2020 IL 124595, ¶ 23. "[P]robable cause exists when the facts known to the officer at the time are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime, based on the totality of circumstances." *People v. Gocmen*, 2018 IL 122388, ¶ 19. In determining whether probable cause exists, officers may rely on their law enforcement training and experience to make inferences; accordingly, a reviewing court makes the determination from the standpoint of an objectively reasonable officer. *Hill*, 2020 IL 124595, ¶ 23. Probable cause does not require an officer to rule out innocent explanations for suspicious facts, but only that the facts available would warrant a reasonable person "to believe there is a reasonable probability 'that certain items may be contraband or stolen property or useful as evidence of a crime.' " *Hill*, 2020 IL 124595, ¶ 24 (quoting *Texas v. Brown*, 460 U.S. 730, 742

(1983)). Defendant does not challenge that the officers stopped him for using his cellular telephone while driving in violation of a city ordinance. Rather, defendant contends that Marano's search of his glove compartment was not supported by probable cause because neither officer testified as to his training or experience detecting cannabis and thus there was no foundation for that testimony.

¶ 23   The Illinois Supreme Court has found that an officer's testimony that he smelled cannabis inside a defendant's vehicle may support probable cause to justify a warrantless search. *Stout*, 106 Ill. 2d at 87. The court determined that "what constitutes probable cause for searches and seizures must be determined from the standpoint of the officer, with *his skill and knowledge* being taken into account, and the subsequent credibility determinations must be made by the trial court." (Emphasis in original.) *Stout*, 106 Ill. 2d at 87. Accordingly, where a trained and experienced police officer detects the odor of cannabis emanating from a defendant's vehicle, additional corroboration is not required to establish probable cause. *Stout*, 106 Ill. 2d at 88. The smell of cannabis supports probable cause to search a vehicle notwithstanding the decriminalization of marijuana in Illinois. See *Hill*, 2020 IL 124595, ¶¶ 35-36; *In re O.S.*, 2018 IL App (1st) 171765, ¶¶ 26-30. However, our supreme court did not say that no foundation is required for a police officer's testimony that he smelled the odor of cannabis. The issue of foundation was not an issue in the *Stout* decision.

¶ 24   At the outset, the State maintains that defendant forfeited a challenge to the foundation for the officers' testimony regarding the smell of cannabis because he first raised the issue in his motion to reconsider, after the State had the opportunity to cure the alleged defect. Defendant never objected to the lack of a foundation for that testimony and thus it was forfeited. *People v. Woods*, 214 Ill. 2d 455, 470 (2005). In addition, defendant never argued plain error, so the issue of the

foundation remains forfeited. The plain-error doctrine allows a reviewing court to address defects affecting substantial rights if the evidence is closely balanced or if fundamental fairness so requires rather than finding the claims forfeited. *Woods*, 214 Ill. 2d at 471.

¶ 25    However, even if we did not find forfeiture in the case at bar and did not consider the officer's testimony concerning the odor of the cannabis, the trial court can consider the totality of the circumstances in each case finding that probable cause existed. *People v. Jackson*, 331 Ill. App. 3d 158, 164 (2002). In the case at bar, the police officer requested defendant to exit the vehicle, but defendant did not comply for at least six minutes. The officer requested defendant to lower his window and defendant did not lower it when requested and then lowered it an inch. Officer Ardolino testified that defendant became "evasive" and made phone calls instead of complying with his requests, calling friends or family members to come to the scene. When the friends and/or family members arrived, defendant threw them the keys to the vehicle. Officer Marano then obtained the keys that were thrown and unlocked the glove compartment of the vehicle and discovered the firearm. Obviously, defendant did not want the police to look into the locked glove compartment and defendant's conduct after being stopped would give a reasonable person the impression that defendant was hiding something. The totality of those circumstances would justify a reasonable person to believe the vehicle contained evidence of criminal activity. *Hill*, 2020 IL 124595, ¶ 23. Consequently, the trial court did not err in denying the motion to suppress.

¶ 26    For the foregoing reasons, we affirm defendant's conviction.

¶ 27    Affirmed.