2024 IL App (1st) 220674-U

No. 1-22-0674

Order filed June 13, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| vs. | ) | No. 19 CR 6473 |
| | ) | |
| THOMAS LINDSEY, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's third-stage dismissal of Lindsey's postconviction petition is affirmed where Lindsey failed to make a substantial showing that his constitutional right to effective assistance of counsel was violated.

¶ 2    Defendant Thomas Lindsey appeals the third-stage dismissal of his petition filed pursuant to the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, Lindsey contends the circuit court erred in dismissing his petition where he made a substantial

showing that his constitutional right to effective assistance of counsel was violated when his trial counsel failed to call his brother, Alonzo Lindsey[1], to testify at trial.

¶ 3    For the following reasons, we affirm the circuit court's third-stage dismissal of Lindsey's postconviction petition.[2]

¶ 4                                   I. BACKGROUND

¶ 5    We discuss only the facts necessary for our disposition of the issues in this appeal. For a more thorough discussion of the facts as they relate to pretrial matters, see Lindsey's direct appeal. *People v. Lindsey*, 2021 IL App (1st) 192208-U.

¶ 6    Lindsey was charged by indictment with multiple offenses following an April 23, 2019 traffic stop. Lindsey filed a motion to suppress evidence, arguing that the officers lacked probable cause to believe his vehicle contained contraband, where the items seized were not in plain view and he did not consent to the search. The court held a hearing on the motion simultaneously with Lindsey's bench trial.

¶ 7    Police officers Nicholas Ardolino and Matthew Marano testified they pulled Lindsey's vehicle over after observing him driving while using a cellular telephone. After smelling cannabis odor, the officers requested Lindsey exit the vehicle, but he refused. After calling family members and friends to the scene, Lindsey eventually exited the car, throwing the car keys to a bystander. Following a search, police officers recovered a semiautomatic handgun with an extended magazine, cannabis, and a "white-like substance" from the glove compartment of the car.

¶ 8    The State entered certified copies of Lindsey's prior convictions for robbery and unlawful use or possession of a weapon by a felon into evidence, and the defense entered stipulations that

---

[1]To avoid confusion, we will refer to Alonzo Lindsey as "Alonzo."
[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

ridge impressions on the magazine of the firearm "was not identified" to a copy of defendant's fingerprint palm card standard.

¶ 9       The trial court denied Lindsey's suppression motion and found him guilty of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2018). On direct appeal, we affirmed Lindsey's conviction, finding that the trial court did not err in denying his motion where the totality of the circumstances would justify a reasonable person to believe the vehicle contained evidence of criminal activity. *Lindsey*, 2021 IL App (1st) 192208-U.

¶ 10      On January 19, 2021, Lindsey, through counsel, filed an initial postconviction petition pursuant to the Act. 725 ILCS 5/122-1 *et seq* (West 2020). Lindsey alleged that he received ineffective assistance of counsel when his trial attorney failed to call his brother Alonzo, who would testify that he owned the firearm that was found in the glove box of the car. Lindsey attached an affidavit from Alonzo, wherein he averred: (1) he was present in court during Lindsey's August 2019 trial, (2) he spoke to Lindsey's trial attorney prior to trial and informed him that he is the owner of the weapon Lindsey was found with, (3) he informed Lindsey's attorney that he had a valid firearm owner's identification (FOID) card and that the weapon was registered to him, (4) he was in possession of the purchase receipts which show he purchased the weapon, (5) he informed the attorney he had left the weapon in the locked glove compartment of the vehicle, (6) the vehicle was not registered to Lindsey and Lindsey did not regularly drive that vehicle, (7) he had never seen the weapon in his brother's possession, (8) he never informed his brother that he had a weapon or kept said weapon in the vehicle, (9) he had no reason to believe Lindsey was aware the weapon was in the vehicle, and (10) he was willing and ready to testify at Lindsey's trial.

¶ 11     The petition was advanced to the second stage in March 2021, and the State filed a response to the petition seven months later. On April 7, 2022, the court held a third stage hearing on Lindsey's petition. Defense counsel proceeded to publish Alonzo's affidavit to the court. Counsel did not present any further evidence. The State called attorney Josh Niewoehner to testify. Niewoehner has worked as a criminal attorney since he was licensed as an attorney in 2003. He has participated in criminal trials as lead counsel. In preparation for trial, Niewoehner investigates the purported testimony of any witnesses who might be called by the defense. Lindsey retained Niewoehner as his attorney in 2019. Prior to Lindsey's trial, Niewoehner met with Alonzo twice at his office and once the morning of Lindsey's trial. Niewoehner spoke with Alonzo about potentially testifying at his brother's trial, prepared him to testify, and issued a subpoena for his presence. However, on the day of trial, Niewoehner did not call Alonzo to testify because he believed the State had failed to meet its burden of proving beyond a reasonable doubt that Lindsey knew the firearm was in the glove box the day he was arrested.

¶ 12     When questioned whether there was anything about Alonzo's potential testimony that played a role in Niewoehner's decision to not call Alonzo as a witness, Niewoehner stated,

> "One of the issues in the case was not only the presence of the gun in the glove box but also the presence of cannabis and suspect cocaine. [Lindsey] was not charged with the cannabis or suspect cocaine.
>
> One of the issues in the case was that [Lindsey], after he was stopped, did not get out of the car for several minutes and then threw the keys to the vehicle, which contained a key to the glove box, to family members on the scene.
>
> After preparing Alonzo Lindsey to testify, it would have been his testimony that when he placed the gun in the glove box, there were not drugs present. I thought that based

on the State's evidence, which came in through two police officers, the way that the evidence came in was good for the defense in that there may have been reasons such as the odor of cannabis or the presence of cannabis to show a reason why [Linsey] acted the way he did.

Alonzo Lindsey's testimony, while it would have helped in some regard to explain that he purchased the gun, he put the gun there, I did not necessarily think would help to that last matter in terms of why [Lindsey] threw the keys. In fact, it could have hurt *** if he were to testify that when he put the gun in the glove box, he did not see drugs."

¶ 13 On cross-examination, Niewoehner reviewed Alonzo's affidavit and agreed that the affidavit appeared to be truthful, in that it reflected the information Alonzo had given Niewoehner prior to Lindsey's trial. Niewoehner believed there was a significant chance that Alonzo would testify at Lindsey's trial and prepared him thusly. He also agreed that he was given police reports containing alleged statements Lindsey made post arrest. Although the State did not reply to a motion Niewoehner filed to produce statements and confessions of the defendant, he assumed that the State would attempt to introduce Lindsey's alleged statements at trial. Niewoehner made an objection to the State attempting to introduce said statements and the court sustained the objection. Consequently, the State was unable at trial to introduce the alleged oral statements contained in the police reports.[3] This was one of the reasons why Niewoehner decided not to call Alonzo to testify. However, the main reason was because he believed the State had failed to meet their burden of proof at the conclusion of their case. Further, had Alonzo testified that there were no drugs present when he placed the gun in the glove box, then it would necessarily create the

---

[3]There was much discussion between defense counsel and the court regarding the content of these alleged statements by Lindsey. The court repetitively insisted on hearing the content of the statements, so the court could know the totality of the circumstances. Counsel repeatedly answered that he was unaware of the contents of the statements and had no way to access such, so he would not elicit said content.

inference that Lindsey had placed the drugs there. Niewoehner conceded that Lindsey was not charged with drug possession. He did not object when the State elicited testimony regarding the drugs because it was a bench trial, and he thought the alleged odor of cannabis might help explain Lindsey's behavior after the traffic stop. This was all part of Niewoehner's trial strategy.

¶ 14    In closing argument, defense counsel argued that Alonzo was an unimpeachable witness who should have been called, absent some articulable prejudice. Counsel claimed Niewoehner's decision could not be classified as trial strategy because it was unsound to not call Alonzo to testify where no harm or prejudice could have resulted therefrom, as Alonzo would have testified that he had a FOID card, the firearm was his, and he locked the weapon in the glove compartment. When discussing the drugs that were found during the arrest, defense counsel argued that Niewoehner should have filed a motion *in limine* to bar any mention of drugs, so it should not have been a concern regarding Alonzo's potential testimony.

¶ 15    The State argued that Niewoehner's representation of Lindsey neither fell below an objective standard of reasonableness nor caused Lindsey any harm. Rather, Niewoehner's choice not to call Alonzo was a reasonable, strategic decision because Alonzo would have been questioned regarding his expected testimony that there were no drugs present when he put the firearm in the glove box and locked it. Niewoehner's concern regarding the negative inference that may have been raised, militating in favor of Lindsey's guilt was both sound and reasonable. The State noted that there are a lot of facts Alonzo's affidavit does not tell the court, leaving open issues such as how Lindsey came into possession of the vehicle, how long he had it, and when the firearm was placed in the glove box. The State further pointed to the speculative nature of some of Alonzo's affidavit statements and argued that there was no evidence provided at the hearing

that Alonzo was a credible witness or that his testimony would have made a difference at Lindsey's trial.

¶ 16     Defense counsel countered that, if Niewoehner thought he was winning, there would be no harm in putting on a solid witness. Counsel argued that Niewoehner performed deficiently because there was no reason not to call Alonzo, and Lindsey was prejudiced because it was a close case and Alonzo's testimony may have "tipped the scales" in favor of Lindsey.

¶ 17     The circuit court issued an oral ruling, rejecting Lindsey's claims of ineffective assistance of counsel. The court found that there may be several strategic reasons why an attorney might not call Alonzo to testify, including: (1) Alonzo's lack of a conceal carry license (CCL), which makes his testimony about putting the weapon in the glove compartment questionable; (2) proffered testimony that the gun was loaded and accessible; (3) the theory that Lindsey knew nothing about what was in the glove compartment would have led to Alonzo being questioned about the recovered cocaine and marijuana; (4) Alonzo could have been indicted on possession of contraband or charged with aggravated unlawful possession of a firearm; and (5) Alonzo's suspected testimony that he did not know about the presence of the contraband might lead to a finding that he was an incredible witness. Ultimately, the court determined Niewoehner had not rendered ineffective assistance. On May 4, 2022, Lindsey filed a timely notice of appeal.

¶ 18                                   II. ANALYSIS

¶ 19     On appeal, Lindsey contends that the circuit court erred in dismissing his postconviction petition where he made a substantial showing that his constitutional right to effective assistance of counsel was violated.

¶ 20     The Act (725 ILCS 5/122-1 *et seq*. (West 2012)) enables a criminal defendant to challenge their conviction based on alleged constitutional violations that occurred during their trial or at

sentencing. *People v. Dupree*, 2018 IL 122307, ¶ 28. Proceedings under the Act are divided into three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, a petitioner need only assert enough facts to set forth the gist of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The circuit court has 90 days to review a petition at the first stage. 725 ILCS 5/122-2.1(a)(2) (West 2012). Issues decided on direct appeal are barred by *res judicata* and issues that could have been raised, but were not, are forfeited. *People v. Blair*, 215 Ill. 2d 427, 442 (2005). If the circuit court—after a threshold evaluation of the allegations—finds that the petition has made an arguable constitutional claim, the petition then advances to the second stage and petitioner may be appointed counsel. *People v. Tate*, 2012 IL 112214, ¶ 10. Alternatively, if the court finds that the petition is frivolous or patently without merit, the court may dismiss the petition. *Id*. If the petition is not dismissed within the proscribed 90-day period, it must be docketed for further consideration. 725 ILCS 5/122-2.1(b) (West 2012).

¶ 21          At the second stage, appointed counsel is required to perform three specific tasks, pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), to ensure a petitioner receives a reasonable level of assistance. *People v. Smith*, 2020 IL App (1st) 181220, ¶ 15. After counsel has made any necessary amendments to the petition, the State enters the proceedings and shall file an answer or motion to dismiss the petition. 725 ILCS 5/122-5 (West 2012). "During the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation." *Domagala*, 2013 IL 113688, ¶ 35. A substantial showing means the allegations, if proven at an evidentiary hearing, would entitle the petitioner to relief. *Id*. The court does not resolve evidentiary questions, nor does it engage in any fact-finding or credibility determinations. *Id*. Instead, all well-pled factual allegations are taken as true unless positively rebutted by the trial record. *Id*. A petition is advanced to the third stage—an evidentiary hearing—only when the

allegations, supported by "affidavits, records, or other evidence" (725 ILCS 5/122-2 (West 2012)), make a substantial showing of a constitutional deprivation. *Dupree*, 2018 IL 122307, ¶ 28.

¶ 22     "A substantial showing is a showing that is real and weighty as opposed to illusory and trivial." (Internal quotation marks omitted.) *People v. Carballido*, 2015 IL App (2d) 140760, ¶ 65. "[A]t a third-stage evidentiary hearing, the trial court acts as factfinder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts." *People v. Jackson*, 2020 IL App (1st) 143025-B, ¶ 29 (citing *People v. Domagala*, 2013 IL 113688, ¶ 34). We will not reverse unless the trial court's findings concerning credibility determinations or fact finding are manifestly erroneous. *People v. House*, 2023 IL App (4th) 220891, ¶ 78. Manifest error is clearly evident, plain, and indisputable. *Id*. "This deferential standard of review reflects the understanding that the trial court is in the best position to observe and weigh the credibility of the witnesses." *Id*. Contrary to Lindsey's argument, we do not review a third stage dismissal *de novo* unless no fact-finding or credibility determinations were necessary at the evidentiary hearing, *i.e.*, there was no new evidence presented and the issues were all purely questions of law. *People v. English*, 406 Ill. App. 3d 943, 952 (2010).

¶ 23     Lindsey claims his postconviction petition was improperly dismissed where he made a substantial showing that his constitutional right to effective assistance of counsel was violated. He alleges that his attorney was objectively unreasonable for failing to call his brother Alonzo at trial to testify as to ownership of the recovered firearm. The State counters that defense counsel's testimony at the third-stage evidentiary hearing indicates that counsel's decision not to call Alonzo was sound trial strategy. Further, the State argues that Lindsey is mistaken that the trial was "devoid of all meaningful adversarial testing," where defense counsel was prepared for trial and cross-examined the State's witnesses in great detail.

¶ 24    Ineffective assistance of counsel claims are resolved pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance, a defendant must establish both "that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23. Specifically, a defendant must show that "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). If a defendant cannot establish prejudice, their ineffective assistance claim necessarily fails. See *People v. Cherry*, 2016 IL 118728, ¶ 31 (failure to establish either prong precludes a finding of ineffectiveness). A reviewing court must be highly deferential in its scrutiny of counsel's performance. *Strickland*, 466 U.S. at 689. As the Supreme Court noted in *Strickland*,

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." *Id.*

¶ 25    Whether to pursue a particular theory of defense is a decision made by trial counsel, and this choice constitutes a matter of trial strategy. *People v. Little*, 2021 IL App (1st) 181984, ¶ 52. "A decision that involves a matter of trial strategy typically will not sustain a claim of ineffective representation." (Internal quotation marks omitted.) *People v. Sanchez*, 2014 IL App (1st) 120514, ¶ 30 (quoting *People v. Redmond*, 357 Ill. App. 3d 256, 260 (2005)). If defense counsel is aware

of exculpatory evidence, but does not present it, counsel's performance may be deemed ineffective. *People v. Bass*, 2022 IL App (1st) 210249, ¶ 30. Indeed, counsel's "failure to call witnesses who would have contradicted the State's evidence and supported the defense can indicate deficient performance." *Id*. However, counsel's decision regarding which witnesses to call is one of trial strategy and is therefore generally immune from claims of ineffective assistance. *Id*.; See *People v. Wilborn*, 2011 IL App (1st) 09802, ¶ 79; *People v. Chapman*, 194 Ill. 2d 186, 230 (2000); People *v. Gibson*, 244 Ill. App. 3d 700, 703-04 (1993). Moreover, "[i]n any ineffectiveness case, a particular decision not to investigate [or call someone as a witness] must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (Internal quotations omitted.) *People v. Dupree*, 2018 IL 122307, ¶ 35 (quoting *People v. Thompkins*, 161 Ill. 2d 148, 161 (1994)).

¶ 26    We agree with the trial court that Lindsey is unable to overcome the presumption that counsel's decision was the product of sound trial strategy. Here, the record as developed reflects Niewoehner's strategic reason for failing to call Alonzo as a witness at Lindsey's trial. Counsel made a thorough investigation into Alonzo's purported testimony, meeting with him several times prior to Lindsey's trial and subpoenaing him to testify on the day of trial. However, after the State closed its case, Niewoehner believed they had failed to meet their burden. The State was unable at trial to introduce Lindsey's alleged oral statements contained in the police reports and this, combined with Niewoehner's concerns regarding Alonzo's proposed testimony, led Niewoehner to decide not to call Alonzo. Niewoehner testified that his strategy was to rely on the State's inability to prove Lindsey guilty. This is a reasonable trial strategy. See *Sanchez*, 2014 IL App (1st) 120514, ¶ 30.

¶ 27    While many statements in Alonzo's affidavit appear exculpatory, there are certain statements that indicate the possibility that Alonzo's testimony could be damaging to Lindsey. As Niewoehner explained, if Alonzo had testified that there were no drugs present when he locked his gun inside the glove compartment of the vehicle, the inference could have been raised that Lindsey thereafter had unlocked the glove compartment and placed the contraband inside. Even if the gun was not his, Lindsey would have seen the weapon and been aware that he possessed control over it. The inference would necessarily be raised that Lindsey knew about the gun, which was counter to Lindsey's argument. After Niewoehner testified that he did not call Alonzo as a matter of trial strategy, the parties inquired as to the reasonableness of counsel's strategy, and the court found that Niewoehner's performance did not constitute ineffective assistance. We agree. Particularly in light of the circumstantial evidence of Lindsey's guilt that was offered at trial— his evasive and furtive actions, his refusal to comply with the police commands, making several phone calls, refusing to leave the vehicle, throwing his car keys to another individual—we cannot say that counsel's choice of strategy was so irrational or unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy. *People v. King*, 316 Ill. App. 3d 901, 916 (2000). Further, we find the record does not demonstrate that Niewoehner's failure to present the testimony of Alonzo caused the trial to be devoid of meaningful adversarial testing.

¶ 28    In conclusion, the trial court's denial of Lindsey's postconviction claim of ineffective assistance of counsel was not manifestly erroneous.

¶ 29                III. CONCLUSION

¶ 30    Based on the foregoing, we affirm the circuit court's judgment dismissing Lindsey's third-stage postconviction petition.

¶ 31        Affirmed.